UNITED STEELWORKERS OF AMERICA, Appellant,

v.

RELIANCE UNIVERSAL INC. OF OHIO.

No. 14834.

United States Court of Appeals Third Circuit.

Argued June 4, 1964.

Decided July 8, 1964.

David E. Feller, Washington, D. C. (Elliot Bredhoff, Jerry D. Anker, Michael H. Gottesman, Washington, D. C., Philip H. Scheiding, Emil E. Narick, Pittsburgh, Pa., on the brief), for appellant.

Charles C. Hewitt, Pittsburgh, Pa. (Eli Krivoshia, Jr., Thorp, Reed & Armstrong, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and HASTIE and GANEY, Circuit Judges.

HASTIE, Circuit Judge.

The matter in dispute on this appeal is whether a purchaser of an industrial plant who has continued the operation substantially unchanged is free to impose terms and conditions of employment in disregard of the collective bargaining agreement which was in force between the seller and the union representing the plant's employees at the time of the sale.

Prior to September 1963, Martin Marietta Corporation owned and operated a concrete pipe plant in Bridgeville, Pennsylvania. For many years the appellant union, United Steelworkers of America, had been the exclusive bargaining representative of the workers employed at the Bridgeville plant. Its most recent collective bargaining agreement was made with Martin Marietta in September, 1962, to "continue in effect until Midnight, July 21, 1964."

In March, 1963, the Federal Trade Commission ordered Martin Marietta to divest itself of the Bridgeville plant, specifying that the divestiture should in-

clude "all machinery, equipment, raw material, reserves, trade names, contract rights, trade marks, and good will, connected therewith or a part thereof". The Commission also directed that the divestiture be accomplished in such a way that the Bridgeville plant could function as a "going concern" and "an effective competitor".

In September, 1963, in compliance with the Commission's mandate, Martin Marietta sold the Bridgeville plant as a going concern to Reliance Universal, Inc.[1] Since the sale Reliance has continued the Bridgeville operation without significant change, employing substantially all of the operating, supervisory and managerial personnel who were formerly employed by Martin Marietta. However, Martin Marietta and Reliance incorporated in the contract of sale a provision that that "Buyer shall not assume any obligation of the * * * [seller] under any collective bargaining agreement * * *."

Thereafter, the union demanded that Reliance honor the outstanding collective bargaining agreement. Reliance refused and the union struck the plant. The union then brought this suit under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, for a declaratory judgment that the collective bargaining agreement in controversy is binding upon Reliance and for an order directing arbitration of claimed violations of that agreement. Admittedly, the collective bargaining agreement provides for the arbitration of such a dispute concerning terms and conditions of employment as is presented here.

On cross motions for summary judgment and for dismissal, the district court dismissed the complaint.[2] This appeal followed.

The district court applied familiar and traditional common law principles to this case. It reasoned that the collective bargaining contract merely created those personal rights and obligations between the contracting parties to which they had expressed their consent. Reliance was a stranger to the contract. Moreover, it did not voluntarily assume its predecessor's labor obligations when it acquired the business, since it included in the purchase agreement an explicit disclaimer of any such responsibility. Therefore, in the district court's reasoned view, to impose the old owner's labor contract upon the new owner would be "such a complete innovation that it cannot be regarded as a feature of federal common law under 29 U.S.C. § 185 [section 301 of the Labor-Management Relations Act], but must await adoption through the legislative sanction of Congress".

The district court's unwillingness to sanction the departure from traditional common law analysis urged by the union is entirely understandable. However, our situation is different. Less than two weeks after the decision below, the Supreme Court decided John Wiley & Sons, Inc. v. Livingston, 1964, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898. In that case the Court concluded that "in appropriate circumstances" certain obligations may be imposed upon a new owner of a business by reason of the collective bargaining contract of the preceding owner. Our task is to determine in the light of the holding and the rationale of the Wiley case, whether the circumstances here are such that Reliance is bound to arbitrate issues covered by and arbitrable under the labor contract of its predecessor in ownership and operation of the Bridgeville plant.

In the Wiley case, Interscience Publishers, Inc., a small publishing company,

---

1. The appellee and present owner, Reliance Universal Inc. of Ohio, is a subsidiary of Reliance Universal, Inc. For present purposes it is not important that there has been a transfer of ownership between these corporations.

2. A counterclaim by Reliance seeking damages for an illegal strike was also dismissed. Reliance has not appealed.

had merged with a larger publisher, Wiley & Sons, Inc., which alone became the surviving entity. Shortly thereafter Wiley closed the former Interscience plant and transferred the activities and personnel of that enterprise to its own larger plant. The union which represented the Interscience employees, under a contract for a term which had not expired at the time of the merger, demanded that Wiley respect seniority and pension rights, guarantees of vacation and severance pay, and job security commitments set out in the Interscience labor contract. Wiley refused and the union demanded arbitration of these issues, as required by the terms of the Interscience contract. Wiley refused to arbitrate and the union sued under section 301 to compel arbitration.

The Supreme Court held that the obligation to arbitrate claims of the type in controversy, which clearly would have existed under the labor contract before the merger, survived that event. So strong, in the Court's stated view, is the federal policy in favor of amicable settlement of labor disputes by arbitration that the emerging federal common law of labor relations requires a succeeding proprietor of a business to take the business subject to a duty to arbitrate grievances, the existence and scope of that duty being defined by whatever unexpired labor contract governed labor relations there at the time of the change in ownership. The Court avoided any expression of views upon any possible effect of a transfer of ownership upon the merits of particular substantive claims of workers, carefully restricting its ruling to the persistence of a duty to arbitrate whatever issues were arbitrable before the transfer.

In one respect the union's case here is stronger than in Wiley. There the plant was closed and its productive activity and some of its employees were absorbed in a pre-existing larger plant. Obviously, difficulties might be experienced in adapting plant wide commitments, which were appropriate for the closed plant to the

situation of employees transferred to and integrated into the work force in another plant. Here, however, that problem does not exist because the original operation remained intact. However, the two cases are different in another detail which, in the new employer's view, should make the Wiley case inapplicable here. Wiley was a merger case. In the present case the plant was sold as a going concern. Appellee argues that a merger is a sort of succession in which it is more reasonable to impose a carry over of obligations between labor and management than in the case of an outright sale of a business. However, a contrary view is clearly indicated by the following language of the Wiley opinion:

"* * * It would derogate from '[t]he federal policy of settling labor disputes by arbitration,' United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed. 2d 1424, if a change in the corporate structure or ownership of a business enterprise had the automatic consequence of removing a duty to arbitrate previously established; this is so as much in cases like the present, where the contracting employer disappears into another by merger, as in those in which one owner replaces another but the business entity remains the same." 376 U.S. at 549, 84 S.Ct. at 914.

Moreover, unless the original corporate operator and the corporation into which it merges were already related before the merger, a fact which does not appear in the Wiley opinion, the legal and equitable considerations involved in imposing a predecessor's obligations upon an independent successor are no different in a merger case than in a sale of business case. We have no doubt that the result the court reached in the Wiley case would have been the same had the transfer there been accomplished by a sale of the business instead of by merger.

One important matter remains. The opposing parties here have argued for

and against the proposition that the collective bargaining agreement is unqualifiedly binding upon Reliance, as would have been the case if there had been an assignment or novation substituting Reliance as a party to the instrument. But, in the Wiley case, the Supreme Court seems to have been careful to avoid so broad a ruling.[3] It merely reasoned and decided that federal labor law imposed upon a succeeding proprietor a duty to arbitrate those questions which his predecessor was bound to arbitrate under his labor contract. The fact that the plant covered by the labor contract had been closed and its employees mingled with other workers with independent and perhaps different rights at another plant may well have influenced this careful limitation of the Wiley holding.

 In any event, we find implicit in the guarded language of the Wiley opinion, recognition and concern that new circumstances created by the acquisition of a business by a new owner may make it unreasonable or inequitable to require labor or management to adhere to particular terms of a collective bargaining agreement previously negotiated by a different party in different circumstances. Although the pre-existing labor contract indicates the structure of labor relations and the established practice of the shop at the beginning of the new proprietorship, an arbitrator of a subsequent complaint charging unwarranted departure from that scheme may properly consider any relevant new circumstances arising out of the change of ownership, as well as the provisions of and practices under the old contract, in achieving a just and equitable settlement of the grievance at hand. The requirements of the contract remain basic guides to the law of the shop, but the arbitrator may find that equities inherent in changed circumstances require an award in a particular controversy at variance with some term or terms of that contract. We do not imply that any departure from what was established under the old contract is justified by any special circumstances of this case. We do not know. And, in any event, this is a matter for the arbitrator's determination.

██ While this is not spelled out in the Wiley case, the power heretofore recognized in arbitrators to achieve justice in situations not contemplated by or not adequately covered in an existing collective bargaining agreement leads us to believe that analogous power exists here. Cf. United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed. 2d 1424. And see Cox Reflections on Labor Arbitration, 1959, 72 Harv.L.Rev. 1482, 1493-1498.

Our conclusion, therefore, is that the 1962 collective bargaining agreement, as an embodiment of the law of the shop, remained the basic charter of labor relations at the Bridgeville plant after the change of ownership. But, in the arbitration of any grievance asserted thereunder, the arbitrator may properly give weight to any change of circumstances created by the transfer of ownership which may make adherence to any term or terms of that agreement inequitable.

The judgment will be reversed and the cause remanded for further proceedings consistent with this opinion.

3. The Court of Appeals for the Ninth Circuit has viewed the Wiley case as authority for making a pre-existing labor contract unqualifiedly binding upon a new proprietor in a situation like ours. The Wackenhut Corp. v. International Union, 332 F.2d 954, decided June 10, 1964.