**LOCAL 82, UNITED PACKINGHOUSE, FOOD AND ALLIED WORKERS, AFL–CIO, Plaintiff-Appellee,**

v.

**UNITED STATES COLD STORAGE CORP., Defendant-Appellant.**

No. 18072.

United States Court of Appeals, Seventh Circuit.

July 31, 1970.

George B. Christensen, Fred H. Daugherty, Ronald R. Baird, Chicago, Ill., for defendant-appellant; Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel.

Eugene Cotton, Irving M. King, Chicago, Ill., for plaintiff-appellee; Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., of counsel.

Before CLARK, Associate Justice, United States Supreme Court, Retired,[1] and CUMMINGS and KERNER, Circuit Judges.

CUMMINGS, *Circuit Judge.*

The question presented by this appeal is whether the district court correctly ordered United States Cold Storage Corporation ("Cold Storage") to arbitrate certain grievances of the plaintiff Union.

Cold Storage is a Delaware corporation engaged in the warehousing business in various locations throughout the United States. Prior to November 1967, it operated a warehouse in Chicago. The Union was the collective bargaining representative of certain employees at that warehouse. On January 11, 1967, Cold Storage and the Union entered into a collective bargaining agreement effective until November 30, 1969. Article VIII of that agreement provided for vacation pay, and Article XVI provided for separation allowances. Article XI covered the adjustment of grievances and provided that in the event of failure to settle a grievance, "the matter may be submitted to arbitration at the election of either party." The contract spelled out the mode of arbitration in some detail.

On October 3, 1967, Cold Storage and the nominee of Mercantile Refrigerated Warehouses, Inc. ("Mercantile"), simultaneously executed a real estate sale contract covering Cold Storage's warehouse and a separate agreement governing other matters incidental to the transfer. The latter agreement contained the provision that

"No provision of the [real estate] Contract or of this agreement is intended to or shall be deemed to require the Purchaser to assume or be bound

---

1. Justice Clark is sitting by designation.

by any existing labor agreement signed by Seller."

A letter from Cold Storage to Mercantile's nominee dated October 3, 1967, further obligated defendant to

"give notice to all our employees at the premises who are covered by collective labor agreements terminating the employment of such employees effective at the close of business on such closing date. We further agree that we will pay all costs incurred in effecting such termination, including the payment of severance and other payments required to be paid under any applicable collective labor agreements signed by us."

Accordingly, on November 24, 1967, Cold Storage terminated the employment of all its workers in the Chicago warehouse. Three days thereafter, the sale was completed and Mercantile commenced operating the warehouse. It hired the employees who had previously worked in the warehouse for Cold Storage, treating them as newly hired. Mercantile maintained that it was not bound by the collective bargaining agreement between Cold Storage and the Union, and a new contract was negotiated by Mercantile and the Union effective March 1, 1968.

The Union has not attempted to enforce the bargaining agreement which it had with Cold Storage against Mercantile through legal proceedings. It has, however, claimed separation allowances and vacation pay from Cold Storage. Defendant declined to pay any of the claims or to negotiate the differences in accordance with the provisions of the January 11, 1967, agreement. In April 1968, therefore, plaintiff filed this action in the district court seeking an award of benefits under the bargaining contract or, alternatively, an order directing Cold Storage to arbitrate the grievances. The district court concluded that the collective bargaining agreement remained in

force and required arbitration of the company's liability for separation allowances and vacation pay.[2] Defendant now requests that we set aside the arbitration order and dismiss the complaint or remand the case for a judicial construction of the contract language in connection with the disputed claims. We refuse both requests and affirm the judgment below.

 Ever since the Supreme Court's decisions in the *Steelworkers* trilogy (United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424), it has been well settled that federal courts have a most restricted role in opposing enforcement of arbitration clauses of collective bargaining agreements. The court is to decide no more than "whether the party seeking arbitration is making a claim which on its face is governed by the contract." United Steelworkers of America v. American Mfg. Co., *supra,* 363 U.S. at p. 568, 80 S.Ct. at p. 1346. An order to arbitrate a grievance must be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. Warrior & Gulf Navigation Co., *supra,* 363 U.S. at pp. 582–583, 80 S.Ct. at p. 1352. Absent an express exception to arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail * * *." *Id.* at p. 585, 80 S.Ct. at p. 1354. Expiration of the very bargaining agreement does not deprive the arbitrator of jurisdiction to award appropriate relief. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358. The

---

2. The district court also ordered distribution by Cold Storage of the assets being held in trust pursuant to the employee pension plan. Cold Storage did not op-

pose this order in the court below and has expressly excepted it from the issues presented on this appeal.

disputed claim to separation pay and vacation allowances involved in this case quite clearly arose under the January 11, 1967, bargaining agreement between plaintiff Union and defendant Cold Storage. Moreover, these grievances appear to be covered by the general provisions governing adjustment of disputes contained in Article XI of the bargaining agreement. That provision expressly provides for the submission of grievances to arbitration as a final step. There is no claim that the Union has failed to observe the proper procedures preliminary to arbitration. The district court was therefore correct in ordering arbitration. Cf., e. g., Sheet Metal Workers' International Ass'n, AFL–CIO v. Barber-Colman, 379 F.2d 533 (7th Cir. 1967); Local 156, United Packinghouse, Food and Allied Workers, AFL–CIO v. Du Quoin Packing Co., 337 F.2d 419 (7th Cir. 1964).

To avoid this result, defendant urges that the sale of the warehouse to Mercantile released Cold Storage from its obligations under the bargaining agreement and forced plaintiff to seek satisfaction of its claims from the purchaser. Cold Storage argues that Mercantile, as the purchaser, became the legally bound "successor" employer and was bound by operation of law to observe the provisions of the January 11, 1967, bargaining contract between the Union and Cold Storage. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898; cf. United Steelworkers of America v. Reliance Universal Inc., 335 F.2d 891, 894 (3d Cir. 1964); Overnite Transportation Co. v. National Labor Relations Board, 372 F.2d 765, 767 (4th Cir. 1967).[3] This obligation included arbitration (Wackenhut Corp. v. International Union, United Plant Guard Workers, 332 F.2d 954, 958 (9th Cir. 1964), and defendant contends that it also bound Mercantile as to claims arising before succession or based upon conduct of the predecessor. We need not take issue with any of these assertions to dispose of defendant's contention. The short answer is that the possible legal rights of the Union against Mercantile, as successor, carry no implication of a release of the predecessor Cold Storage from obligations arising under the bargaining agreement between itself and the Union prior to the transfer of ownership.[4] Nothing in *Wiley* or the cases which have followed it suggests that a doctrine which has been fashioned to preserve the continuity of collective bargaining arrangements and protect employees' interests under those contracts should be thus turned against the Union. Defendant's argument not only runs counter to collective bargaining policy under the National Labor Relations Act but would represent an anomaly in basic contract law.

Finally, there was no waiver by the Union of its rights against Cold Storage. Plaintiff's decision to negotiate a new bargaining agreement with Mercantile did not signify abandonment of its rights against defendant for the separation and vacation payments assertedly due its members. When the employees accepted employment with Mercantile, the Union notified Cold Storage that their acceptance was without prejudice to any rights the employees might have against Cold Storage under their collective bargaining agreement of January 11, 1967. Defendant's own contractual negotiations and agreement with Mercantile concerning the transfer of the warehouse indicate that

---

3. See also William J. Burns International Detective Agency, Inc., 182 N.L.R.B. No. 50 (1970); Kota Division of Dura Corporation, 182 N.L.R.B. No. 51 (1970); and Hackney Iron & Steel Company, 182 N.L.R.B. No. 53 (1970).

4. We need not consider whether *Wiley* suggests that the Union might have legal rights against the successor for satisfaction of obligations incurred by the original employer. Similarly, we need not examine the possibility that the predecessor might remain secondarily liable under the continuing collective bargaining agreement for damages suffered by the union members at the hands of their new employer.

those parties considered satisfaction of such claims as severance pay to be seller's expenses. No danger of double recovery by the Union is apparent. Nothing in this record justifies relieving Cold Storage of its obligation to arbitrate.

Affirmed.