**DETROIT LOCAL JOINT EXECUTIVE BOARD, HOTEL AND RESTAURANT EMPLOYES AND BARTENDERS INTERNATIONAL UNION, AFL–CIO, Plaintiff-Appellee,**

v.

**HOWARD JOHNSON COMPANY, INC., Defendant-Appellant.**

No. 72–2009.

United States Court of Appeals, Sixth Circuit.

Argued April 12, 1973.

Decided July 12, 1973.

James D. Tracy, Detroit, Mich., for defendant-appellant; Ronald J. Santo, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., on brief.

Donald F. Sugerman, Detroit, Mich., for plaintiff-appellee; Miller, Klimist, Cohen, Martens & Sugerman, Detroit, Mich., on brief.

Before PHILLIPS, Chief Judge, and CELEBREZZE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

The plaintiff, Detroit Local Executive Board, filed this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185,[1] seeking to require the defendant, Howard Johnson Company, Inc., to arbitrate grievances that arose during its take-over of a motel and restaurant formerly owned by P. L. Grissom & Son, Inc., and the Belleville Restaurant Company.

On Decembr 7, 1959, the defendant and P. L. Grissom & Son, Inc., entered into a license agreement providing for the operation of a "Howard Johnson Motor Lodge" in Belleville, Michigan. On August 18, 1960, the defendant entered into an operator's agreement with Ben Bibb, P. L. Grissom, and the Belleville Restaurant Company for the operation of a "Howard Johnson's Restaurant" adjacent to the motor lodge. On January 1, 1968, the Belleville Restaurant Company and the Hotel & Restaurant Employees & Bartenders International Union entered into a collective bargaining contract affecting the restaurant employees. On August 1, 1968, P. L. Grissom & Son, Inc., the operator of the motor lodge, entered into a collective bargaining agreement with the Hotel, Motel and Restaurant Employees Union, Local 705, concerning the motel employees. On June 16, 1972, P. L. Grissom & Son, Inc., Charles Grissom, and the Belleville Restaurant Company[2] sold their interest in the motor lodge and the restaurant to the Howard Johnson Company, Inc. Pursuant to an oral agreement, the transfer

---

1. Section 301 of the L.M.R.A., 29 U.S.C. § 185, provides for action in federal courts by either party to enforce the provisions of a collective bargaining agreement.

2. For convenience the prior owners of both the restaurant and the motor lodge will hereafter be referred to as the Grissoms.

date was set for July 24, 1972. On June 28, 1972, Howard Johnson notified Grissoms that it would not recognize or assume any labor agreements entered into by these companies. Also Howard Johnson would not assume any obligations or liabilities of the companies resulting from any labor agreements or from unfair labor practices. On July 9, 1972, Grissoms gave notice to their employees that their employment would be terminated at midnight July 23, 1972. On July 13, 1972, registered mail notices were sent to the union [3] notifying it of the termination of the business. Howard Johnson began interviewing prospective employees on July 10, 1972, and the first employees were hired on July 18, 1972. When Howard Johnson took over the operation of the motel and restaurant, it retained only nine of the restaurant's employees and only one of the motel's employees. At least 40 employees were permanently replaced.

On July 21, 1972, the plaintiff union instituted this action in state court and obtained a temporary injunction prohibiting Howard Johnson from locking out or terminating the employment of the 40 employees. The company did not honor the injunction, claiming that it did not receive adequate service and notice. A hearing was held at the state court level at which the injunction was dissolved, pending a further pretrial hearing. The defendant filed a petition for removal and the state court pretrial hearing as such was never held. A hearing was held in federal district court on August 7, 1972, at which time the parties orally agreed on a stipulation of facts. On August 22, 1972, the district court entered its memorandum, finding for the plaintiff.[4] Notice of appeal was duly filed and the district court granted a stay pending appeal.

The collective bargaining agreement in effect between the motor lodge and the union contained the usual arbitration provisions. The grievance procedures were in four steps, the fourth step being submission of the grievance to an arbitrator.[5] The arbitration provision provided:

**Section 2.** An arbitrator shall not have any right or authority to add to, subtract from or modify the terms and provisions of this Agreement. Further, the renewal, extension, modification or amendment of this Agreement shall not be subject matter of any grievance or arbitration procedure.

The agreement also provided:

"This Agreement shall be binding upon the successors, assigns, purchasers, lessees or transferees of the Employer whether such succession, assignment or transfer be effected voluntarily or by operation of law or by merger or consolidation with another company provided the establishment remains in the same line of business."

Apparently neither agreement [6] attempted to delineate specifically which types of disputes were arbitrable.

The district court examined in close detail the two leading cases of the Supreme Court applicable to this action, John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) and NLRB v. Burns International Security Services, Inc., 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). The district court concluded that *Wiley* was more in point than *Burns* and consequently that the defendant should be

---

3. While the unions named in the two agreements bear distinct names they are apparently identical in interest and governance and will be referred to herein and considered as one.

4. The Grissoms apparently have expressed their willingness to settle or arbitrate any liability they might have under the collective bargaining agreements.

5. The collective bargaining agreement between the restaurant and the union contained a similar grievance procedure, but only in three steps.

6. The restaurant-union agreement although it contained an arbitration clause did not include either of the above-quoted provisions.

required to arbitrate.[7] This finding was premised on the conclusion that Howard Johnson was a successor employer, and therefore, under *Wiley* should be required to honor the arbitration clause of the Grissoms' collective bargaining agreements with the union. The district court left to the arbitrator the decision as to which provisions of the agreements should be applicable to Howard Johnson.

The first question we must face is whether Howard Johnson is a successor employer. The Court in *Wiley* said:

> We do not hold that in every case in which the ownership or corporate structure of an enterprise is changed the duty to arbitrate survives. As indicated above, there may be cases in which the lack of any substantial continuity of identity in the business enterprise before and after a change would make a duty to arbitrate something imposed from without, not reasonably to be found in the particular bargaining agreement and the acts of the parties involved. 376 U.S. at 551, 84 S.Ct. at 915.

In *Burns* the Court cited with approval a number of court decisions enforcing orders of the NLRB delineating a number of factors to consider in determining whether there is a "continuity of interest" so that the purchaser of a business is a successor. These factors include: the prior and subsequent structure of the business operation, NLRB v. Zayre Corp., 424 F.2d 1159, 1163 (5th Cir. 1970); S. S. Kresge Co. v. NLRB, 416 F.2d 1225 (6th Cir. 1969), the location of the operation, NLRB v. Zayre, *supra*; S. S. Kresge v. NLRB, *supra*; NLRB v. McFarland, 306 F.2d 219 (10th Cir. 1962), and the identity of the employees and the nature of the work, NLRB v. Zayre, *supra*, Tom-A-Hawk Transit, Inc. v. NLRB, 419 F.2d 1025 (7th Cir. 1969).[8]

Howard Johnson argues that the controlling factor in all successorship cases is whether the new owner hired a majority of the old owner's employees. For support it points to the Court's language in *Burns*.

> It has been consistently held that a mere change of employers or of ownership in the employing industry is not such an "unusual circumstance" as to affect the force of the Board's certification within the normal operative period *if a majority of employees after the change of ownership or management were employed by the preceding employer*. 406 U.S. at 279, 92 S. Ct. at 1577 (emphasis added).

Also:

> But where the bargaining unit remains unchanged and a majority of the employees hired by the new employer are represented by a recently certified bargaining agent there is little basis for faulting the Board's implementation of the express mandates of § 8(a)(5) and § 9(a) by ordering the employer to bargain with the incumbent union. 406 U.S. at 281, 92 S.Ct. at 1579.

Moreover, Howard Johnson points to this court's decisions in NLRB v. Interstate 65 Corp., 453 F.2d 269 (6th Cir. 1971) and NLRB v. Wayne Convalescent Center, 465 F.2d 1039 (6th Cir. 1972). Both of these decisions placed great reliance on the hiring of enough of the predecessor's employees to constitute a majority of the successor's work force in finding successorship status. On the other hand, the absence of the hiring of

---

7. In *Wiley* the Court required the surviving corporation, after a merger, to arbitrate grievances under the arbitration provisions contained in the collective bargaining agreement negotiated by the union with the displaced corporation.

  In *Burns* the Court held that a successor although required to bargain with the union if it retained a majority of the predecessor's employee, need not honor the previously negotiated collective bargaining agreement.

8. This list of considerations is not intended to be exhaustive. Since each case must be considered on its own facts, other factors could be considered in appropriate circumstances.

a majority of the predecessor's employees may lead to the refusal to find successorship status. *See* NLRB v. John Stepp's Friendly Ford, Inc., 338 F.2d 833 (9th Cir. 1964). Apparently the same considerations apply to actions under § 301 of the LMRA. In Wackenhut Corp. v. International Union, United Plant Guards, 332 F.2d 954 (9th Cir. 1964), the Ninth Circuit placed major reliance on the hiring of substantially all of the predecessor's employees to find successorship status. The Court there also followed *Wiley* and required the successor employer to abide by the substantive terms of the collective bargaining agreements as determined by an arbitrator. In Printing Specialties & Paper Products Union v. Pride Papers Aaronson Bros. Paper Corp., 445 F.2d 361 (2nd Cir. 1971), the Second Circuit refused to find successorship in an action under § 301. The Court stated: "The fact that no [predecessor's] employees worked at the new enterprise is most compelling evidence of lack of substantial continuity in the business enterprise." 445 F.2d at 363–364. Only one case has been brought to our attention finding successorship in a § 301 action where the successor did not hire a majority of the predecessor's employees. In Monroe Sander Corp. v. Livingston, 377 F.2d 6 (2nd Cir. 1967), the Second Circuit held that where a parent company terminated the employees of a subsidiary in order to continue the same functions at a newly purchased operation, the parent could be required to arbitrate, as a successor, the termination of the subsidiary's employees.

█ In the case before us, the district court held that although Howard Johnson did not hire a majority of Grissoms' employees, it could nevertheless be required to arbitrate as a successor. The court found considerable continuity of interest between the new and old businesses. It pointed out that substantially all of the assets of Grissoms were purchased, that the location and identity of the businesses remained exactly the same, that there was only a one minute hiatus in the operation of the enterprises at the time of the transfer, and that many of the products and services were identical. Relying on these factors the district court viewed Howard Johnson as a successor. We agree with this conclusion.

In addition to the criteria relied upon by the district court, the franchising agreements between Grissoms and Howard Johnson included extensive reservations by Howard Johnson over the operation of the motel and the restaurant, evidencing the close control it possessed over the management and activities of both operations. Also the motel bargaining agreement itself contained a successorship clause.[9]

Furthermore, we do not deem the refusal to hire a majority of Grissoms' employees to preclude the finding of successorship, at least in this § 301 action. Howard Johnson's argument here attempts to pull itself up by its own bootstraps. It argues that it need not arbitrate the refusal to hire Grissoms' employees because it is not a successor. It is not a successor, because it did not hire a majority of Grissoms' employees. Also to adopt the position urged by Howard Johnson would make the employees' jobs completely contingent on the employer's desire either to retain or to disregard the collective bargaining agreements. If Howard Johnson sought to retain the agreement negotiated by Grissoms, it would hire a majority of Grissoms' employees. If, on the other hand, it wished to disregard the collective bargaining agreement, it would simply hire none or at best only a few of the former employees. The decision whether to hire the predecessor's employees should turn

---

9. This clause does not indicate an intention on the part of Howard Johnson to be bound by the collective bargaining agreement since it was not a party to the agreement, but it does indicate the intention of the union to have the collective bargaining agreement continue in effect after a change in ownership.

upon other and more relevant considerations.[10]

■ Since we determine that Howard Johnson is a successor employer, we must decide whether such status carries with it the obligation to arbitrate under the collective bargaining agreements. In *Wiley* the Supreme Court held that collective bargaining agreements under federal labor law must be interpreted differently than other contracts as construed under common law principles. Accordingly, the Court held that the arbitration provisions are binding on a successor employer even though it was not a party to the collective bargaining agreement. Following *Wiley* several circuits have held that a successor employer in § 301 actions could be bound by the substantive terms of the previously negotiated collective bargaining agreement if appropriate under the arbitrator's award. *See, e. g.,* Wackenhut Corp. · v. International Union, United Plant Guards, *supra;* United States Gypsum Co. v. United Steelworkers of America, 384 F.2d 38 (5th Cir. 1967); Monroe Sander Corp. v. Livingston, *supra.*

Howard Johnson, however, argues that the Supreme Court's decision in *Burns* that a successor employer does not violate § 8(a)(5) when it refuses to honor any of the substantive terms of the predecessor's collective bargaining agreement, also precludes an arbitrator from requiring a successor to honor any of the terms of the previous agreement. We do not feel that *Burns* requires such a result.

In *Wiley* the Court stated:

that the rightful prerogative of owners independently to rearrange their

businesses and even eliminate themselves as employers be balanced by some protection to the employees from a sudden change in the employment relationship. The transition from one corporate organization to another will in most cases be eased and industrial strife avoided if employees claims continue to be resolved by arbitration rather than by "the relative strength . . . of the contending forces. Warrior & Gulf, *supra,* [363 U.S.] at 580 [80 S.Ct. at 1352, 4 L.Ed.2d 1409], 376 U.S. at 549, [84 S.Ct. at 914]."

Nothing in *Burns* in our opinion alters this reflection of national policy. It is true that in *Burns* the Court said:

A potential employer may be willing to take over a moribund business only if he can make changes in corporate structure, composition of the labor force, work location, task assignment, and nature of supervision. Saddling such an employer with the terms and conditions of employment contained in the old collective-bargaining contract may make these changes impossible and may discourage and inhibit the transfer of capital. On the other hand, a union may have made concessions to a small or failing employer that it would be unwilling to make to a large or economically successful firm. The congressional policy manifest in the Act is to enable the parties to negotiate for any protection either deems appropriate, but to allow the balance of bargaining advantage to be set by economic power realties. Strife is bound to occur if the concessions that must be honored do not correspond to the relative economic strength of the parties. 406 U.S. at 287–288, 92 S.Ct. at 1582.

---

10. Howard Johnson also argues that since this was a purchase and sale of assets, it is not a successor as it did not by operations of the prior agreements. In *Wiley,* the transaction was a merger in which the transaction was a merger in which the surviving corporation is liable for the debts of the disappearing corporation. This distinction has been consistently rejected in § 301 actions. United States Gypsum Co. v. United Steelworkers of America, 384 F.2d 38 (5th Cir. 1967); United Steelworkers of America v. Reliance Universal Inc., 335 F.2d 891 (3rd Cir. 1964); Wackenhut Corp. v. International Union, United Plant Guards, 332 F.2d 954 (9th Cir. 1964).

Furthermore, the Court criticized the Board's position that the successor is bound by all the terms of the collective bargaining agreement. It said:

The Board's position would also raise new problems, for the successor employer would be circumscribed in exactly the same way as the predecessor under the collective-bargaining contract. It would seemingly follow that employees of the predecessor would be deemed employees of the successor, dischargeable only in accordance with provisions of the contract and subject to the grievance and arbitration provisions thereof. Burns would not have been free to replace Wackenhut's guards with its own except as the contract permitted. Given the continuity of employment relationship, the pre-existing contract's provisions with respect to wages, seniority rights, vacation privileges, pension and retirement fund benefits, job security provisions, work assignments and the like would devolve on the successor. 406 U.S. at 288–289, 92 S.Ct. at 1582 (footnotes omitted).

At first glance this language appears to cast doubts on the continued validity of *Wiley*. We do not feel, however, that the Court intended to eviscerate *Wiley*. The two cases are not irreconcilable. In *Burns* the Supreme Court distinguished *Wiley* on three grounds. First, the Court noted that *Wiley* arose in the context of a Sec. 301 action for arbitration, while *Burns* arose in the context of a Sec. 8(a)(5) proceeding where the National Labor Relations Board is "expressly limited by the provisions of Sec. 8(d)."[11] 406 U.S. at 285, 92 S.Ct. at 1581. Second, the Court noted that *Wiley* was limited to an arbitration order while in *Burns* the Board found the company in violation of Sec. 8(a)(5) for refusing to bargain with the union in not honoring the substantive provisions of the collective bargaining agreement.

Third, *Wiley* involved a merger occurring against the background of state law, while in *Burns* the two companies were competitors and had no prior dealings.

The first and second distinctions presented by the Court are convincing that *Burns* does not preclude arbitration in the situation before us. Traditionally, arbitrators have been accorded wide flexibility in interpreting collective bargaining agreements. In *Wiley* the Court's limited holding was that the successor employer was under a duty to arbitrate grievances, the scope and extent of the duty being governed by the collective bargaining agreement. The Court avoided any expression of views as to the merits of the substantive matters of arbitration. Since *Wiley* arbitration awards have taken into account altered conditions created by a change of employers, although of course the arbitrator's authority must come from the collective bargaining agreement itself. As stated by the Third Circuit in United Steelworkers of America v. Reliance Universal, Inc., 335 F.2d 891, 895 (3rd Cir. 1964):

In any event, we find implicit in the guarded language of the Wiley opinion, recognition and concern that new circumstances created by the acquisition of a business by a new owner may make it unreasonable or inequitable to require labor or management to adhere to particular terms of a collective bargaining agreement previously negotiated by a different party in different circumstances. Although the pre-existing labor contract indicates the structure of labor relations and the established practice of the shop at the beginning of the new proprietorship, an arbitrator of a subsequent complaint charging unwarranted departure from that scheme may properly consider any relevant new circumstances arising out of the change of

---

11. Section 8(d), 29 U.S.C. Sec. 158(d), as interpreted by the Supreme Court in H. K. Porter v. NLRB, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970) prohibits the NLRB from ordering a party to accede to a demand to incorporate a specific provision into a collective bargaining agreement.

ownership, as well as the provisions of and practices under the old contract, in achieving a just and equitable settlement of the grievance at hand. The requirements of the contract remain basic guides to the law of the shop, but the arbitrator may find that equities inherent in changed circumstances require an award in a particular controversy at variance with some term or terms of that contract.

The NLRB in its *Burns* decision had adopted an all-or-nothing approach. If the employer was a successor then it was required to honor *all* of the terms of the predecessor's agreement. If not a successor, it did not have to honor any part of the predecessor's agreement. Burns Int'l. Services, Inc., 182 NLRB 348 (1970). Apparently the Board felt that it was barred from taking a middle ground by requiring the successor to honor selective portions of the agreement by the Supreme Court's ruling in H. K. Porter Co. v. NLRB, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970). As noted by the Supreme Court in *Burns* the Board's position would lead to rigidity in labor relations. This factor we feel is primarily the Supreme Court's reason for rejection of the Board's position.[12] In arbitration proceedings as ordered below such rigidity is not present.

Also we feel that our holding is in accordance with the national policy of the settlement of labor disputes by arbitration rather than by a contest of strength between the parties. *See*, United Steel Workers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960). We do not feel that such a role was vitiated by *Burns*.[13]

Finally, we must note that nothing in our opinion should be taken as an expression on the merits of the respective complaints before the arbitrator. As stated by the Fifth Circuit in International Ass'n of Machinists v. Hayes Corp., 296 F.2d 238, 244 (5th Cir. 1961):

> We make doubly plain that this opinion in no way indicates what, if any, decision an arbitrator should or must make. We hold merely that he should determine the grievance. Whether the decision or the remedy prescribed is, or is not, supportable is for another day.

In accordance with the foregoing the judgment of the district court is affirmed.

---

12. Even before the Supreme Court's ruling in *Burns* the National Labor Relations Board had retreated from this approach and found that "unusual circumstances" will present the imposition of the entire collective bargaining agreement where it would lead to inequitable results. Emerald Maintenance Inc., 188 NLRB No. 139 (1971).

13. The plaintiff suggests that the approach adopted in this case will make the employees' and the employer's rights contingent on the choice of forum. We do not disagree with this characterization, but feel that it follows from the first ground on which *Burns* distinguished *Wiley*— that the NLRB is expressly limited by Sec. 8(d) of the Act while an arbitrator is under no such restriction.