In re **PLAZA MISSION BOTTLING CO., INC., Bankrupt.**

**Bankruptcy No. 76–B–2275.**

United States Bankruptcy Court, E. D. New York.

Oct. 1, 1981.

Bertram Goldstein, New York City, for trustee.

Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City, for respondent.

## DECISION

C. ALBERT PARENTE, Chief Judge.

Andrew Schnier, the trustee in the above-captioned case, (hereafter "petitioner") moves for an order reducing the claims filed by Soft Drink Workers Union, Local 812 BT (hereafter "respondent") and determining the extent to which, if any, the claims are entitled to priority under § 64(a) of the Bankruptcy Act.

Predicated on the testimony adduced at the hearing held on March 30, 1981, and the statement of facts submitted by the parties, the Court finds the facts as follows:

(1) Prior to 1976, Plaza Beverage Company (hereafter "PBC") was in the business of bottling and canning soft drinks.

(2) Fifty percent of PBC's capital stock was owned by the Sharnac family and the remaining fifty percent was owned by the Zocks family.

(3) Alvin Rosenzweig and Edwin Berger were co-vice-presidents of PBC and were in charge of the company's daily operation.

(4) Approximately 90 to 115 non-supervisory personnel and 10 supervisory personnel were employed by PBC.

(5) As a member of the Metropolitan Soft Drink Board of Trade, Inc. (hereafter "Association"), PBC was a party to the collective bargaining agreement executed by the Association and the respondent on May 19, 1974. Said contract was to terminate on May 19, 1978.

(6) Due to a dispute between Berger and Rosenzweig as to the future operation of PBC, PBC was reorganized in February of 1976. The result of said reorganization was the formation of two independent corporate entities, to wit, Plaza Mission Bottling Co., Inc. (hereafter "bankrupt") and Plaza Mission Canning Co., Inc. (hereafter "PMC").

(7) All machinery and equipment used in the canning operation was transferred to PMC and the machinery and equipment used in the bottling operation was transferred to the bankrupt.

(8) PMC assumed PBC's liabilities that were incurred in the canning operation and the bankrupt assumed all liabilities derived from the bottling operation.

(9) Ninety (90) percent of PBC's non-supervisory personnel and all of its supervisory personnel were employed by the bankrupt.

(10) Berger became president of the bankrupt and Rosenzweig became president of PMC.

(11) PBC's corporate existence terminated upon the formation of PMC and the bankrupt.

(12) After the reorganization of PBC, PMC and the bankrupt conducted their businesses as separate entities, incurred separate liabilities, and operated from separate locations.

(13) PMC terminated its operations after June 1976.

(14) The bankrupt did not become a member of the Association. Furthermore, neither the Association nor the respondent executed a written consent, as required by Article 1 of the collective bargaining agreement, deeming the bankrupt a party to the collective bargaining agreement.

(15) Prior to the reorganization of PBC, Berger, Rosenzweig, David Levinger (respondent's president), Irving Cottler (respondent's business agent), and Nathan Stern (executive secretary of the Association), attended a meeting to discuss the formation of PMC and the bankrupt.

(16) At said meeting, the parties agreed that the bankrupt would continue to observe the terms and conditions set forth in the collective bargaining agreement.

(17) Pursuant to this agreement, the bankrupt recognized the respondent as the bargaining representative for its employees, continued to deduct union dues from the employees' paychecks, continued to pay insurance premiums on the employees' health plans, maintained salaries at the levels set forth in the collective bargaining agreement, and continued to honor the sick leave and vacation provisions of said agreement.

(18) After the formation of the bankrupt, respondent did not seek to commence collective bargaining negotiations with the bankrupt.

(19) On August 6, 1976, an involuntary petition in bankruptcy was filed against Plaza Mission Bottling Co., Inc. and it was adjudicated a bankrupt by an order of this Court dated September 27, 1976.

(20) Respondent filed, on behalf of several of the bankrupt's employees, two proofs of claim for unpaid wages, unused sick pay and vacation pay on November 15, 1976. Said claims arose during the first six months of 1976.

(21) Petitioner contends that since the bankrupt was not bound to the terms and conditions of the collective bargaining agreement, the bankrupt is not legally responsible for any claims that arose from said agreement.

The aforesaid findings of fact give rise to the following issues:

(1) Should successor status be conferred on the bankrupt?

(2) Assuming the bankrupt to be a successor employer, is the bankrupt bound to the terms and conditions of the collective bargaining agreement in question?

(3) Is the bankrupt, as an alter ego of PBC, bound to the terms and conditions of the collective bargaining agreement?

I.

Petitioner contends that successor status may be found only where: (1) there was a merger, *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); (2) both before and after the change in the corporate structure, the owners controlled the same assets and conducted the same businesses from the same facilities, *Robbins v. Newman,* 481 F.Supp. 1241 (E.D.Mo.1979); or (3) all the capital stock of the predecessor was sold to the successor, *General Team., Ch. & H., L.U. No. 249 v. Bill's Trucking, Inc.,* 493 F.2d 956 (3rd Cir. 1974).

As the facts of this case do not fall within the aforesaid set of circumstances, petitioner contends that successor status should not be conferred upon the bankrupt.

In contraposition, respondent alleges that the bankrupt is in fact a successor employer.

Petitioner's definition of a successor is too restrictive in light of the United States Supreme Court's decision in *Howard Johnson Co., Inc. v. Detroit Loc. Jt. Ex. Bd., etc.,* 417 U.S. 249, 263, 94 S.Ct. 2236, 2243, 41 L.Ed.2d 46 (1974) where the Court stated:

... There is, and can be, no single definition of "successor" which is applicable in every legal context. A new employer, in

other words, may be a successor for some purposes and not for others.

The courts have enunciated the following test for successor status when the issue before them is whether or not a corporation may be bound to the terms and conditions of a labor agreement that was negotiated by the corporation's predecessor: Does there exist a substantial continuity of identity in the business enterprise across the change in ownership? *Service, Hospital, etc. v. Cleveland Tower Hotel*, 606 F.2d 684 (6th Cir. 1979); *NLRB v. Bausch & Lomb, Inc.*, 526 F.2d 817 (2nd Cir. 1975); *Saks & Co. v. NLRB*, 634 F.2d 681 (2nd Cir. 1980); *Intern. U. of Elect., Radio & Mach. Wkrs. v. NLRB*, 604 F.2d 689 (D.C.C.1979).

■ The factors to be considered as indicia of substantial continuity of identity in the business enterprise include:

(1) substantial continuity of identity in the work force across the change in ownership;

(2) whether the new employer is using the same supervisory personnel, machinery, and equipment; and

(3) whether the new employer is producing the same goods or rendering the same services as the predecessor.

*See Service, Hospital, etc. v. Cleveland Tower Hotel, supra; Internat. U. of Elec., Radio & Mach. Wkrs. v. NLRB, supra.*

■ In the case at bar, it is undisputed that over 90 percent of PBC's non-supervisory employees and all of its supervisory personnel were hired by the bankrupt. Furthermore, the machinery and equipment used by PBC in its bottling operation was transferred to the bankrupt.

Finally, the services provided by PBC with respect to the bottling of soft drinks were continued by the bankrupt. The fact that PBC's business operation was split between two corporations, the bankrupt and PMC, is not materially significant. *Robbins v. Newman, supra.*

Therefore, predicated on the facts in the case at bar and the aforesaid precepts of law, the Court confers successor status upon the bankrupt.

## II.

Petitioner contends that even if successor status is conferred on the bankrupt, it does not follow as a matter of law that the bankrupt is bound to the collective bargaining agreement.

In contraposition, respondent contends that in accord with the Supreme Court's ruling in *John Wiley & Sons, Inc. v. Livingston, supra*, the bankrupt, as a successor employer, is bound to the substantive provisions of the labor agreement.

Resolution of this conflict requires the Court to examine the development of the successorship doctrine as it applies to the facts of this case.

In *John Wiley*, Interscience Publishers, Inc. entered into a collective bargaining agreement with District 65, Retail, Wholesale and Department Store Union, AFL–CIO, which was to expire on January 31, 1962. Prior to the expiration date of said agreement, Interscience Publishers, Inc. merged with John Wiley & Sons, Inc. Subsequent to said merger, a dispute arose under the labor agreement. No satisfactory solution having been reached, the union commenced an action pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to compel John Wiley & Sons, Inc. to submit the dispute to arbitration as mandated by the labor agreement. John Wiley & Sons, Inc. resisted the union's request on the ground that it was not bound to the labor agreement.

The Supreme Court held that:

... the disappearance by merger of a corporate employer which has entered into a collective bargaining agreement with a union does not automatically terminate all rights of the employees covered by the agreement, and that, in appropriate circumstances, present here, the successor employer may be required to arbitrate with the union under the agreement.

*John Wiley & Sons, Inc. v. Livingston, supra*, 84 S.Ct. at p. 914.

The Supreme Court provided the following rationale for its holding:

... The objectives of national labor policy, reflected in established principles of federal law, require that the rightful prerogative of owners independently to rearrange their businesses and even eliminate themselves as employers be balanced by some protection to the employees from a sudden change in the employment relationship. The transition from one corporate organization to another will in most cases be eased and industrial strife avoided if employees' claims continue to be resolved by arbitration rather than by "the relative strength * * * of the contending forces," *Warrior & Gulf, supra,* 363 U.S. at [574,] 580, 80 S.Ct. at [1347] 1352, 4 L.Ed.2d 1409.

*John Wiley & Sons, Inc. v. Livingston, supra,* 84 S.Ct. at p. 914.

Subsequent to the Supreme Court's decision, a majority of the circuits expanded the successorship doctrine to find that not only does a successor have a duty to arbitrate, but that a successor may be bound to the substantive provisions of a collective bargaining agreement that was negotiated by its predecessor. *See Teamsters, Chauffeurs, etc., Local U. 524 v. Billington,* 402 F.2d 510 (9th Cir. 1968); *United Steelworkers of Amer. v. Reliance Univ. Inc.,* 335 F.2d 891 (3rd Cir. 1964); *NLRB v. Interstate 65 Corporation,* 453 F.2d 269 (6th Cir. 1971).

However, the United States Court of Appeals for the Second Circuit did not follow the expanded reading given to *John Wiley & Sons, Inc. v. Livingston, supra.*

In *Printing S. & P. L. U. No. 447 v. Pride P. Aaronson Bros. P. Corp.,* 445 F.2d 361 (2nd Cir. 1971), *cert. denied* 404 U.S. 1001, 92 S.Ct. 564, 30 L.Ed.2d 553 (1971), the Second Circuit held that the only obligations that have been imposed by the courts on successor employers are the obligations to arbitrate and to recognize and bargain with the union.

Further, the Second Circuit held that the National Labor Relations Board could not impose the substantive provisions of a labor agreement upon a party who had no part in the negotiation of said agreement. *The William J. Burns International Detective Agency v. NLRB,* 441 F.2d 911 (2nd Cir. 1971). The Supreme Court affirmed the Second Circuit's decision and held that although a successor may have a duty to bargain with a union recognized by its predecessor, this duty does not obligate the successor to observe the substantive terms of the labor agreement that was negotiated by its predecessor, unless the successor has assumed the provisions of said agreement. *NLRB v. Burns International Security Services, Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1971).

The Supreme Court predicated its holding on the following factors.

First, based on the mandate, as set forth in § 8(d) of the National Labor Relations Act, 29 U.S.C. § 158(d), that the duty to bargain in good faith does not compel either party to agree to a proposal or require the making of a concession, neither Congress nor the courts can compel a party to accept a collective bargaining agreement.

Second, prior to the Court's decision in *John Wiley & Sons, Inc. v. Livingston, supra,* the policy of the National Labor Relations Board was that a successor employer's duty to bargain with the union did not include a duty to observe the substantive terms of the predecessor's labor agreement.

Attempting to reconcile its prior decision in *John Wiley & Sons, Inc. v. Livingston, supra,* with this decision, the Supreme Court stated:

*Wiley's* limited accommodation between the legislative endorsement of freedom of contract and the judicial preference for peaceful arbitral settlement of labor disputes does not warrant the Board's holding that the employer commits an unfair labor practice unless he honors the substantive terms of the pre-existing contract. The present case does not involve a § 301 suit; nor does it involve the duty to arbitrate.

*NLRB v. Burns International Security Service, Inc., supra,* 92 S.Ct. at p. 1581.

As a result of the Supreme Court's attempt to reconcile its ruling in *John Wiley & Sons, Inc. v. Livingston, supra,* with its holding in *NLRB v. Burns International Security Service,* the various circuits predicated their decisions as to when a successor employer is bound to its predecessor's labor agreement, upon whether the action arose under the Labor Management Relations Act or under the National Labor Relations Act. *See General Team., Ch. & H., L.U. No. 249 v. Bill's Trucking, Inc., supra.*

This artificial distinction was rejected by the Supreme Court in *Howard Johnson Co., Inc. v. Detroit Loc. Jt. Ex. Bd., etc.,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974). The Supreme Court held that its holding in *NLRB v. Burns International Security Service, supra,* applies to actions commenced under the Labor Management Relations Act as well as actions brought under the National Labor Relations Act.

Further, the Court reiterated its position that a successor employer could only be bound to its predecessor's labor contract if the successor assumed the agreement or if it has misled the predecessor's employees into believing that all would be retained on the basis of existing wages, hours, and conditions of employment.

■ In summary, a successor employer will be bound to the predecessor's labor agreement only if (1) the successor employer misleads the predecessor's employees; or (2) the successor assumes the terms and conditions set forth in said agreement.

In the case at bar, respondent does not contend that the bankrupt misled PBC's employees into believing that they would be employed under the same provisions as set forth in the labor agreement, but rather it alleges that the bankrupt assumed said agreement.

Presence of the following factors have been found sufficient to hold that the successor employer has assumed its predecessor's labor agreement:

(1) the collective bargaining agreement contains a provision providing that said agreement would be binding upon the employer's successors;

(2) did the successor employer disclaim any obligation to honor the pre-existing collective bargaining agreements; and

(3) did the successor employer honor any of the provisions of the collective bargaining agreement.

*Local 92 v. Strabley Building Supply Co.,* 98 LRRM 3025 (N.D. Ohio 1978).

■ The facts in the case at bar support the finding that the bankrupt assumed the collective bargaining agreement negotiated by PBC. Edwin Berger, president of the bankrupt, expressly stated at a meeting held prior to the bankrupt's formation that he would continue to observe the terms and conditions set forth in the labor agreement. Consistent with this statement, the bankrupt recognized the respondent as the bargaining representative for its employees, deducted union dues from the employees' salaries, paid insurance premiums on the employees health and welfare plans, maintained salaries at the levels set forth in the labor agreement, and honored the sick leave and vacation provisions contained in the collective bargaining agreement.

Therefore, the Court finds that the bankrupt has assumed its predecessor's labor contract with respondent and is bound to the substantive provisions contained therein.

### III.

In the alternative, respondent contends that the bankrupt is bound to its predecessor's collective bargaining agreement under the alter ego doctrine.

■ Where the succeeding employer is the mere alter ego of its predecessor, the succeeding employer is subject to all the legal and contractual obligations of the predecessor. *Howard Johnson Co., Inc. v. Detroit Loc. Jt. Ex. Bd., etc., supra; NLRB v. Bell Company, Inc.,* 561 F.2d 1264 (7th Cir. 1977).

For the alter ego doctrine to apply, the following two elements must be present: (1) predecessor continues to maintain a sub-

**434**

stantial degree of control over the business claimed to have been transferred to the successor; and (2) said transfer was for the purpose of avoiding the effect of the labor laws. *Howard Johnson Co., Inc. v. Detroit Loc. Jt. Ex. Bd., etc., supra; In re Bell Company, Inc.,* 225 NLRB No. 63 (1976); *NLRB v. Scott Printing Corp.,* 612 F.2d 783 (3rd Cir. 1979).

In the case at bar, although Edwin Berger, former vice-president of PBC, controlled the operations of the bankrupt, it is undisputed that PBC underwent a bona fide reorganization which was not for purposes of avoiding the effect of the labor laws.

Therefore, the alter ego doctrine is not applicable in the case at bar.

*CONCLUSION*

Premised on the aforesaid findings of fact and precepts of law, the Court finds that successor status should be conferred on the bankrupt and that as the bankrupt has been found to have assumed the collective bargaining agreement negotiated by its predecessor, the bankrupt is bound to the substantive provisions of said agreement. Therefore, petitioner's motion objecting to respondent's claims on the ground that the bankrupt is not bound to the collective bargaining agreement is denied.

As agreed by the parties, resolution of any dispute as to the amount of respondent's claims or the extent to which, if any, said claims are entitled to priority under § 64(a) of the Bankruptcy Act is held in abeyance pending negotiations by the parties to resolve such disputes.

SETTLE ORDER.