JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* JOSÉ RAMÓN FREYRE, H.N.C. FONTÁNEZ BAKERY, demandado.

*Número:* JRT-62-4    *Resuelto:* 29 de marzo de 1963

*J. B. Fernández Badillo, Procurador General, José Orlando Grau* y *J. F. Rodríguez Rivera,* abogados de la peticionaria; *José Ramón Freyre,* abogado del demandado.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Dávila y Ramírez Bages.

PER CURIAM: En diciembre de 1959 la Unión Núm. 1 de Panaderos, Reposteros y Ramas Anexas de Puerto Rico, F.L.T., radicó un cargo(1) ante la Junta de Relaciones del Trabajo de Puerto Rico contra el patrono José Ramón Freyre, h.n.c. Fontánez Bakery alegando que el demandado había incurrido en una práctica ilícita del trabajo al violar lo dispuesto en el Art. 8(1) (F) de la Ley de Relaciones del Trabajo de Puerto Rico—29 L.P.R.A. sec. 69(1) (F).—En julio de 1960, en virtud de la autoridad conferida en el Art. 9(1) (a) de dicha Ley—29 L.P.R.A. sec. 70(1) (a),—la peticionaria notificó al demandado la querella y la audiencia a celebrarse.

---

(1) Lee así el cargo:

"Desde el día 1ro. de agosto de 1959 y en adelante ha venido violando los términos del convenio colectivo vigente al rehusar cumplir con las disposiciones del Artículo XII del mismo que le requiere aportar sus contribuciones para un 'Plan de Hospitalización y Dispensario' ".

"Desde el 16 de febrero de 1960 y en adelante la parte querellada ha continuado violando el mencionado convenio en sus Artículos VI y XIV, al rehusar descontar y entregar a la Unión querellante las cuotas de sus empleados y subsiguientemente se ha negado a resolver estas diferencias en el Comité de Quejas y Agravios."

En marzo de 1961 el Oficial Examinador rindió su informe y en octubre del mismo año la Junta expidió su Decisión y Orden 257. En enero de 1962 se atacó la validez de dicha Decisión y Orden ante este Tribunal. La peticionaria retiró la Decisión y Orden, sin perjuicio, y dos meses más tarde emitió su Segunda Decisión y Orden.

El 30 de abril de 1962 la Junta solicitó que este Tribunal pusiera en vigor la Segunda Decisión y Orden. El 23 de mayo siguiente el demandado solicitó se expidiera un "Auto de Revisión", que consideramos como mostración de causa del demandado.

El demandado adquirió la Fontánez Bakery por compra al Sr. Fontánez el 4 de julio de 1959. El 1ro. de agosto de dicho año el demandado firmó una estipulación con la Unión que representa los obreros que trabajan en su negocio. La estipulación lee así:

"1—La parte patronal se compromete a través de esta ESTIPULACIÓN a cumplir con todo lo dispuesto en el Convenio Colectivo firmado por el anterior patrono de la panadería y repostería 'Fontánez Bakery' Sr. Juan Fontánez y el cual tiene vigencia desde el día 30 de enero de 1957 hasta igual día de enero de 1958 y el cual a [sic] quedado prorrogado por las partes por un año adicional o sea hasta el 30 de enero de 1960 [sic] y así sucesivamente de año en año a menos que una de las partes notifique a la otra por escrito y con sesenta (60) días de antelación a la fecha de vencimiento, su deseo de enmendarlo o negociar un nuevo Convenio."

El patrono establece como defensa el que la estipulación transcrita carece de validez porque a la fecha en que él adquirió el negocio y la firmó, el convenio celebrado entre la Unión y el anterior patrono no estaba vigente. Basa su contención en la interpretación que da la cláusula de vigencia del referido convenio.

Es innecesario entrar a considerar la referida cláusula de vigencia así como determinar si el convenio estaba o no vigente a la fecha en que se firmó la estipulación. Lo importante es tener presente lo que establece la estipulación al

efecto de que "[l]a parte patronal se compromete a través de esta Estipulación a cumplir con todo lo dispuesto en el convenio colectivo firmado por el anterior patrono de la Panadería y Repostería Fontánez Bakery . . .". Al firmar la estipulación surgió un nuevo convenio entre la Unión y el nuevo patrono. La intención era claramente establecer una relación contractual que gobernara las relaciones entre la Unión y el patrono. Mediante la estipulación se creó una relación cuyos elementos y condiciones eran, por adopción, los dispuestos en el convenio anterior. Sería por demás injusto para la Unión que, al cabo de seis meses de firmar la estipulación, el patrono asumiera la posición de que carecía de validez lo acordado ya que el convenio anterior no estaba vigente. La estipulación le dio vigencia. La actitud del patrono al firmar impidió a la Unión iniciar inmediatamente las negociaciones para firmar un nuevo convenio colectivo. El patrono no podía hacer creer a la Unión que estaba operando sujeto a un convenio para que entonces, cuando el patrono no cumpliera con el mismo, éste pudiera levantar la defensa de que no había tal convenio.

Habiendo convenido el patrono seguir operando bajo los términos del anterior convenio, estaba obligado a cumplir con todas sus disposiciones, incluyendo la de proveer los servicios médicos que disponía el convenio serían provistos. El convenio disponía que el patrono proveería tal servicio, de modo que Fontánez estaba obligado a hacerlo. El contrato de servicios médicos era meramente la forma de instrumentar la obligación contraída en el Art. 12 del convenio que dispone así:

"El patrono se compromete con la Unión a darle servicios de hospitalización y dispensario a todos los empleados que forman parte de la Unidad contratante, ENTENDIÉNDOSE, que el plan no excederá de $2.75 mensuales por cada operario que emplee el patrono. Siendo el plan de la Clínica Dr. Seín el que ambas han escogido para poner en función inmediatamente después de firmado este Convenio, el patrono se compromete a hacerle el Contrato correspondiente con el director y representante de la

Clínica para estos fines, el plan se mantendrá en vigor durante toda la vigencia del Convenio."

El patrono levanta una defensa adicional consistente en imputarle dolo al presidente de la Unión en el sentido de que en la estipulación firmada se hacía referencia a que la cláusula de vigencia del convenio anterior era de renovación automática y que por el patrono entenderlo así fue que firmó la referida estipulación; que sólo cuando examinó detenidamente el convenio llegó a la conclusión de que la cláusula de vigencia no tenía el alcance que el presidente de la Unión le había dado. Ya anteriormente hemos dejado consignado que a los efectos de la estipulación firmada carece de importancia la interpretación de la cláusula de vigencia, pues específicamente el patrono se comprometió a seguir operando de acuerdo con las estipulaciones contenidas en el referido convenio, independientemente de si estaba vigente o no.

*La petición para que se ponga en vigor la Orden de la Junta será declarada con lugar.*