MARÍA BRUNO LÓPEZ, querellante y recurrente, *v.* MOTORPLAN, INC. y OTROS, querellados y recurridos.

*Número:* RE-92-373          *Resuelto:* 16 de julio de 1993

112

*Luis Amauri Suárez Zayas*, abogado de la recurrente; *Carlos Bobonis González* y *José Luis Ubarri*, abogados de la recurrida.

El Juez Asociado Señor Fuster Berlingeri emitió la opinión del Tribunal.

Nos toca resolver si la doctrina del patrono sucesor que hemos adoptado jurisprudencialmente se extiende a reclamaciones que surgen al amparo de la legislación que prohíbe el despido por razón de embarazo.

I

María Bruno López comenzó a trabajar como empleada regular de Motorplan, Inc. en junio de 1986. Para el 15 de agosto de 1988, cuando fue despedida de su empleo, se desempeñaba como agente de alquiler en Budget Rent a Car, negocio que operaba Motorplan, Inc. en virtud de una franquicia que poseía de la compañía norteamericana de arrendamiento de vehículos de motor del mismo nombre. Motorplan, Inc. despidió a Bruno alegadamente por razones de insubordinación y ausencias frecuentes en el trabajo.

El 6 de diciembre de 1988 Bruno presentó una querella contra Motorplan, Inc. y algunos de sus gerentes alegando que fue despedida discriminatoriamente debido a su condición de embarazada. Reclamó que se le indemnizara por los daños sufridos y que *se le reinstalara en su empleo* con pago y beneficios marginales retroactivos a la fecha del alegado despido sin causa justificada.

La querella de Bruno fue contestada por Motorplan, Inc. el 29 de diciembre de 1988 y, posteriormente, fue objeto de numerosos eventos procesales, incluyendo pleno descubrimiento de prueba y varios señalamientos de vistas judiciales. El 4 de junio de 1990, finalmente se pautó el juicio del caso para el 24 de agosto de ese año.

Así las cosas, el 12 de julio de 1990 Motorplan, Inc. vendió varios de sus activos a Auto–Servi, Inc., incluyendo la franquicia de Budget Rent a Car y el negocio de alquiler de vehículos de motor en el cual la querellante había trabajado hasta el momento de su despido. Surge de los autos que Auto–Servi, Inc. no existía aún como entidad jurídica a

la fecha cuando ocurrió el despido de la querellante. También surge que Auto–Servi, Inc. conocía sobre el despido de la querellante y de su reclamación contra Motorplan, Inc., alegadamente con anterioridad a la fecha cuando se formalizó la venta de activos entre Motorplan, Inc. y Auto–Servi, Inc.[1]

El 13 de agosto de 1990 Motorplan, Inc. compareció ante el tribunal de instancia solicitando que se dejara sin efecto el señalamiento de vista en su fondo de 24 de agosto de ese año y que se paralizaran los procedimientos en el caso hasta tanto la querellante incluyese a Auto–Servi, Inc. en éstos. Informó al tribunal sobre la venta referida de activos, indicó que, por razón de esa venta, Motorplan, Inc. no tenía ya una posición en la cual pudiese ser reinstalada la querellante de dictarse sentencia a su favor, y alegó que Auto–Servi, Inc. era posiblemente un patrono sucesor y por ello parte indispensable en el caso.

El 20 de agosto de 1990 la querellante, apoyándose en la solicitud de Motorplan, Inc. de 13 de agosto y en el hecho de que Auto–Servi, Inc. "continuó operando la franquicia de Budget Rent a Car ininterrumpidamente y prácticamente con el mismo personal" que antes, pidió permiso para enmendar su querella para añadir a Auto–Servi, Inc. como coquerellada. Querella enmendada, pág. 4. El 3 de octubre el foro a quo accedió a esta solicitud y el 7 de diciembre de 1990 Bruno presentó una querella enmendada incluyendo a Auto–Servi, Inc. en el pleito, alegadamente por ser un patrono sucesor.

Luego de contestar la querella enmendada por todas las partes, Auto–Servi, Inc. solicitó sentencia sumaria de desestimación a su favor, alegando que la doctrina del patrono sucesor no es aplicable a reclamaciones por despido como la de marras. El 10 de julio de 1992 el tribunal de

---

[1] En su querella enmendada, Bruno alegó que Auto–Servi, Inc. conocía acerca del despido y de la reclamación antes de efectuarse la venta. Tanto Motorplan, Inc. como Auto–Servi, Inc. aceptaron en su contestación que Auto–Servi, Inc. conocía acerca del despido, aunque ésta aparentemente negó lo de la fecha.

instancia emitió una sentencia parcial final declarando con lugar la moción de Auto–Servi, Inc. Determinó el tribunal que conforme a los términos de la venta de activos, Auto–Servi, Inc. habría de dedicarse a la misma actividad de negocios que Motorplan Inc., utilizando su propia planta física y equipo, conservando en su nómina a la mayoría de los empleados de Motorplan, Inc. y proporcionando el mismo servicio que esta compañía, por lo cual Auto–Servi, Inc. era un patrono sucesor conforme a los criterios de similaridad sustancial en la operación y continuidad en la identidad de la empresa formulados en la doctrina jurisprudencial. Sin embargo, también concluyó el foro de instancia que dicha doctrina no aplicaba a casos de reclamaciones al amparo de la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–151), de la Ley Núm. 69 de 6 de julio de 1985 (29 L.P.R.A. sec. 1321 *et seq.*), o de la Ley Núm. 3 de 13 de marzo de 1942 (29 L.P.R.A. secs. 467–474) porque el legislador "no incorporó la figura del patrono sucesor en esos cuerpos de ley".

No conforme con la determinación de instancia que desestima la querella contra Auto–Servi, Inc., Bruno recurrió ante nos aduciendo que dicho foro erró al resolver que la doctrina del patrono sucesor no era aplicable aquí. El 25 de septiembre de 1992 emitimos el recurso de revisión solicitado por Bruno.

## II

Desde hace ya tres décadas adoptamos en Puerto Rico la doctrina del patrono sucesor para atender situaciones donde una operación comercial cambia de propietario y surgen problemas respecto a los derechos de los empleados frente al nuevo patrono. Conforme a esta doctrina, cuando un patrono sustituye a otro por fusión corporativa o transferencia de activos se estima que el nuevo patrono asumirá las obligaciones pertinentes contraídas

por el anterior. *J.R.T. v. Asoc. C. Playa Azul I*, 117 D.P.R. 20 (1986); *J.R.T. v. Coop. Azucarera*, 98 D.P.R. 314 (1970); *J.R.T. v. Club Naútico*, 97 D.P.R. 386 (1969); *Beaunit of Puerto Rico v. J.R.T.*, 93 D.P.R. 509 (1966). Véanse, además: *J.R.T. v. Freyre*, 87 D.P.R. 891 (1963), y D. Fernández y C. Romany, *Derecho Laboral: Casos y Materiales*, Río Piedras, Ed. U.P.R., 1987, T. 2, págs. 1265–1324. En particular, hemos resuelto expresamente que si hay similaridad sustancial en la operación de la empresa y continuidad en la identidad de la empresa antes y después del cambio corporativo, el patrono sucesor puede ser responsable de las obligaciones laborales de su predecesor. *J.R.T. v. Asoc. C. Playa Azul I*, supra, pág. 29, esc. 6; *J.R.T. v. Coop. Azucarera*, supra, pág. 322. Adoptamos esta doctrina para ofrecer protección a los empleados en situaciones de cambio súbito en la relación obrero-patronal y así darle vigencia a la importante política pública de promover la paz industrial. *J.R.T. v. Asoc. C. Playa Azul I*, supra, págs. 29–30; *J.R.T. v. Coop. Azucarera*, supra, págs. 322 y 325; *Beaunit of Puerto Rico v. J.R.T.*, supra, pág. 519.

En el Tribunal de Distrito Federal para el Distrito de Puerto Rico se ha adoptado también la doctrina del patrono sucesor, por razones y para fines análogos a los nuestros. *E.E.O.C. v. Puerto Rico Job Corps.*, 729 F. Supp. 208 (D.P.R. 1990).

La doctrina referida fue desarrollada originalmente por el Tribunal Supremo de Estados Unidos y otros foros federales para hacer valer determinados derechos que los trabajadores habían logrado en convenios laborales luego de un proceso de negociación colectiva. Se resolvió, entonces, que el patrono sucesor estaba obligado a respetar *las obligaciones respecto al arbitraje* acordadas por el patrono anterior en el convenio colectivo. *John Wiley & Sons v. Livington*, 376 U.S. 543 (1964); *Wackenhut Corp. v. International U., United Plant Guard W.*, 332 F.2d 954 (9no Cir. 1964); *United Steel Workers of Amer. v. Reliance Univ.*

*Inc.*, 335 F.2d 891 (3er Cir. 1964). Más tarde, el ámbito de la doctrina se amplió en la jurisdicción federal para hacer al patrono sucesor *responsable de las prácticas ilícitas* cometidas por el antecesor, requiriéndole al nuevo patrono reponer a empleados que habían sido ilegalmente despedidos por el patrono anterior. *Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. 168 (1973); *United States Pipe and Foundry Company v. N.L.R.B.*, 398 F.2d 544 (5to Cir. 1968); *Gibbs Shipyards Inc. v. N.L.R.B.*, 333 F.2d 459 (5to Cir. 1964). Los tribunales federales han extendido recientemente la doctrina referida al campo de la legislación social protectora del trabajo, imponiéndole responsabilidad al patrono sucesor por *despidos discriminatorios* de su antecesor, principalmente en casos de despidos injustificados basados en el discrimen por razón de raza o sexo, al amparo del Título VII del *Civil Rights Act* de 1964, 42 U.S.C. sec. 2000 *et seq.* (1994). Véanse: *E.E.O.C. v. Vucitech*, 842 F.2d 936 (7mo Cir. 1988); *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228 (7mo Cir. 1986); *Musikiwamba v. E.S.S.I, Inc.*, 760 F.2d 740 (7mo Cir. 1985); *Bates v. Pacific Maritime Ass'n*, 744 F.2d 703 (9no Cir. 1984); *In re National Airlines, Inc.*, 700 F.2d 695 (11mo Cir. 1983); *Slack v. Havens*, 522 F.2d 1091 (9no Cir. 1975); *Equal Emp. Op. Com'n v. MacMillan Bloedel Containers*, 503 F.2d 1086 (6to Cir. 1974). Véanse, también: *E.E.O.C. v. Puerto Rico Job Corps.*, supra; *Bernstein v. Consolidated Foods Corp.*, 622 F. Supp. 1096 (D. Ill. 1984); *Brown v. Evening News Ass'n*, 473 F. Supp. 1242 (D. Michigan 1979); *Burwell v. Eastern Air lines, Inc.*, 394 F. Supp. 1361 (D. Va. 1975); *Escamilla v. Mosher Steel Company*, 386 F.Supp. 101 (D. Tex. 1975). En esta nueva situación se ha justificado la extensión de la doctrina del patrono sucesor afirmándose que la política pública contra el despido discriminatorio de trabajadores es de carácter similar a la política pública sobre el derecho a la negociación colectiva y la prohibición de prácticas ilícitas del trabajo que dieron lugar originalmente a dicha

doctrina. Véase *Equal Emp. Op. Com'n v. MacMillan Bloedel Containers*, supra.

En Puerto Rico, siguiendo la trayectoria de los tribunales federales, adoptamos la doctrina del patrono sucesor, primero para hacer valer los términos de un convenio colectivo (*Beaunit of Puerto Rico v. J.R.T.*, supra, y *J.R.T. v. Coop. Azucarera*, supra); y luego, en el contexto de la responsabilidad de un patrono sucesor por las prácticas ilícitas cometidas por el patrono anterior (*J.R.T. v. Club Naútico*, supra). En el caso de marras tenemos la ocasión para decidir si en nuestra jurisdicción esta doctrina también es aplicable en el ámbito de los despidos discriminatorios, como ha sucedido en la jurisdicción federal.

## III

Reiteradamente hemos resuelto que en los casos donde una institución normativa vigente en Puerto Rico derive de determinada tradición jurídica, los precedentes de ésta tendrán valor persuasivo en nuestra jurisdicción. *Pérez Maldonado v. J.R.T.*, 132 D.P.R. 972 (1993); *Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576 (1983). Este principio de hermenéutica es particularmente vinculante cuando los valores o intereses que se protegen, mediante los precedentes foráneos, tienen también una análoga prioridad en nuestra jurisdicción. Según ya hemos indicado, en la jurisprudencia federal reciente se ha aplicado la doctrina del patrono sucesor a los despidos arbitrarios en reconocimiento de la importante política pública de Estados Unidos contra el discrimen fijada en las leyes federales sobre los derechos civiles. En Puerto Rico, nuestro propio ordenamiento jurídico también otorga rango superior a la prohibición de los despidos discriminatorios (*Ibáñez v. Molinos de P.R., Inc.*, 114 D.P.R. 42 (1983); *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985)), y el discrimen por razón de sexo está vedado tanto constitucionalmente como por estatuto (*Rivera Águila v. K-Mart de P.R.*,

123 D.P.R. 599 (1989)). En particular, nuestra legislación social condena claramente el despido por razón de embarazo, el cual es una modalidad de discrimen por razón de sexo. *Rivera Águila v. K-Mart de P.R.,* supra; Sec. 4 de la Ley para la protección de madres obreras, 29 L.P.R.A. sec. 469. Vista, pues, la armonía esencial que existe entre nuestros importantes intereses y valores y los de la jurisdicción federal, no vemos razón válida alguna para no aplicar en Puerto Rico, en el contexto aludido, la doctrina del patrono sucesor, tal como se ha hecho en esa jurisdicción, sobre todo cuando precisamente derivamos de ella la doctrina en cuestión. En otras ocasiones análogas a ésta, donde existía similitud entre nuestro esquema normativo contra el discrimen en el empleo y el esquema federal, hemos adoptado en Puerto Rico algunos preceptos del esquema federal. *Odriozola v. S. Cosmetic Dist. Corp.,* supra, págs. 496–497; *García Pagán v. Shiley Caribbean, etc.,* 122 D.P.R. 193 (1988).

■ No empece lo anterior, la ilustrada sala sentenciadora concluyó que la doctrina no es aplicable al campo de la legislación protectora del trabajo porque el legislador no la incorporó expresamente a esa legislación. Si bien ello es cierto, no constituye un fundamento que decisivamente determine el asunto en cuestión. El foro a quo debió considerar que el legislador tampoco incluyó la figura del patrono sucesor en el campo de las leyes relativas a la negociación colectiva y a las prácticas ilícitas del trabajo, y ello no ha sido óbice para que tanto los tribunales federales como nosotros la hayamos desarrollado jurisprudencialmente. Aquí, como allá, hemos adoptado y ampliado la doctrina del patrono sucesor en auxilio de la responsabilidad judicial de darle vigencia en casos concretos a políticas públicas importantes en el campo laboral. Ahora, igual que en la jurisdicción federal, extendemos nuevamente la doctrina para asegurar que el despido discriminatorio no quede impune en situaciones donde se sustituye un patrono por otro y se dan los elementos que definen a un patrono sucesor.

Lo hacemos así movidos por el criterio fundamental en cuanto a que es parte de nuestra función inherente incorporar principios y doctrinas de otras jurisdicciones cuando ello sea necesario para resolver casos concretos, en armonía con el derecho vigente y si ello es lo más indicado y conveniente conforme a nuestra realidad económica, social y cultural. *Collazo Cartagena v. Hernández Colón*, 103 D.P.R. 870 (1975); *Pereira v. I.B.E.C.*, 95 D.P.R. 28 (1967). Se trata del acervo supletorio que jurisprudencialmente se va formando en torno a los estatutos, en particular respecto a materias especiales. *Rosario v. Atl. Southern Ins. Co. of P.R.*, 95 D.P.R. 759 (1968).

## IV

Para completar nuestro cometido, en este caso debemos hacer unos pronunciamientos adicionales breves sobre cómo ha de aplicarse la doctrina del patrono sucesor a situaciones concretas como la de marras. Es menester recordar que, conforme a dicha doctrina, los perfiles precisos de la responsabilidad que se le ha de imponer al patrono sucesor dependen de los hechos particulares del pleito en cuestión. Las obligaciones que se atribuirán al nuevo patrono se determinan caso a caso, con arreglo a las circunstancias particulares de cada cual. *Howard Johnson Co. v. Hotel Employees*, 417 U.S. 249, 256 (1974); *Equal Emp. Op. Com'n v. Mac Millan Bloedel Containers*, supra, pág. 1091; *E.E.O.C. v. Puerto Rico Job Corps.*, supra, pág. 218; C. Barksdale, *Succesor Liability Under the National Labor Relations Act and Title VII*, 54 Tex. L. Rev. 707 (1976).

Las expresiones siguientes en dos casos federales indican con claridad los principios aplicables.

En *Howard Johnson Co. v. Hotel Employees*, supra, págs. 262–263, esc. 9, el propio Tribunal Supremo federal señaló que:

But the real question in each of these "successorship" cases is,

on the particular facts, what are the legal obligations of the new employer to the employees of the former owner or their representative? The answer to this inquiry requires analysis of the interest of the new employer and the employees and of the policies of the labor laws in light of the facts of each case and the particular legal obligation which is at issue, whether it be the duty to ... remedy unfair labor practices, the duty to arbitrate, etc. There is, and can be, no single definition of "successor" which is aplicable in every legal context. A new employer, in other words, may be a successor for some purposes and not for others.

Y en *E.E.O.C. v. Puerto Rico Job Corps.*, supra, págs. 218–219, el Tribunal federal resumió el asunto indicando que:

Several courts have applied successor liability doctrines to *Title VII* successor problems. See, e.g., Bates 744 F.2d at 709; *In re National Airlines*, 700 F.2d at 698; *E.E.O.C. v. MacMillan Bloedel Cointainers, Inc.*, 503 F.2d 1086, 1091 (6th Cir. 1974); *Bernstein v. Consolidated Foods Corp.*, 622 F.Supp. 1096, 1108–1109 (N.D. Ill. 1984). In these cases, liability depends on whether the successor had notice, whether the predecessor was capable of providing relief, whether there has been substantial continuity of business operations, ... No one of these factors is controlling; the court must look at all of them along with any others that present themselves in the case before it, and it must make its decision by balancing the interest of the plaintiff and the national policy of abhorrence toward employment discrimination against the interest of the successor.

■ Como puede observarse, para determinar la responsabilidad del patrono sucesor es indispensable sopesar varias cuestiones entre las cuales cabe destacar: (1) si el nuevo patrono conocía de antemano la reclamación del empleado contra su predecesor; (2) la relativa capacidad de cada uno de los patronos para satisfacer adecuadamente la reclamación del empleado, de ser ésta válida, y(3) el beneficio que hayan podido o puedan derivar respectivamente cada uno de los patronos por la acción que se impugna. Barksdale, *supra*, págs. 726–733. En esencia, en estos ca-

sos es menester poner en la balanza los respectivos intereses y circunstancias de las partes para así determinar cúal es la responsabilidad que propia y justamente debe imponérsele al patrono sucesor.

Le corresponde al tribunal de instancia aplicar estos conceptos normativos a los hechos concretos del caso, luego de considerar la prueba que sea pertinente.

*Se dictará sentencia revocando la del tribunal de instancia de 10 de julio de 1992 y se devolverá el caso para procedimientos ulteriores conforme a lo aquí resuelto.*

El Juez Asociado Señor Negrón García concurre con el resultado sin opinión escrita.