*725 TEXTO COMPLETO DE LA SENTENCIA
Verodam Distributors Unlimited (Verodam) apela de una sentencia dictada por el Tribunal de Primera Instancia, mediante la cual le impuso el pago de mesada a los apelados, tras determinar que Verodam es el patrono sucesor de éstos. Por los fundamentos que discutiremos, se confirma la sentencia apelada.
I
Juan R. de Torres Suers. Inc. (en lo sucesivo De Torres) era una compañía intermediaria que distribuía diversos productos entre las grandes cadenas de comercio al detal. Por circunstancias del mercado comenzó a perder la exclusividad y la penetración de los productos de primer orden que representaba. Como consecuencia se endeudó, tomó préstamos, buscó nuevas líneas e invirtió lo necesario para mercadearlas. De 30 líneas de productos de gran prestigio, De Torres logró retener cuatro. Posteriormente, redujo su personal de 117 a 28 empleados y finalmente cerró, no sin antes salvar las últimas cuatro líneas de productos que había podido retener, las que le entregó a un acreedor. El acreedor estableció una nueva firma de distribución, Verodam Ditributors Unlimited Inc. Esta última compró el edificio donde operaba De Torres, retuvo a 17 de los empleados y ofreció trabajo a algunos de los que quedaban en la firma anterior.
El 1 de junio de 2005, el Tribunal de Primera Instancia dictó sentencia declarando con lugar una querella por despido injustificado presentada por los apelados de epígrafe contra Verodam.
En la referida sentencia, se consignaron 23 determinaciones de hechos, de la cual surge que los siguientes empleados fueron despedidos bajo el pretexto de que sus plazas fueron eliminadas o que la compañía cerraba sus operaciones:

“a. José Rodríguez Santiago: trabajó con Juan R. De Torres, Sue., Inc. desde el 26 de agosto de 1982 hasta el 8 de octubre de 2003; devengaba un salario mensual aproximado de $2,035.00.

b. Salvador Martínez Martínez: trabajó con Juan R. De Torres, Sue. Inc., desde el 2 de febrero de 1980 hasta el 8 de octubre de 2003; devengaba un salario mensual aproximado de $3,033.00.

c. Orlando del Valle: trabajó con De Torres desde marzo de 1986 hasta el 8 de octubre de 2003; devengaba un salario mensual aproximado de $1,604.00.

d. Luis A. Gaud Pérez: trabajó con De Torres desde el 14 de agosto de 1974 hasta el 8 de octubre de 2003; devengaba un salario mensual aproximado de $2,004.00.

*726
e.Wilmer Lizasuain Soto: trabajó con De Torres desde el 6 de junio de 1983 hasta el 8 de octubre de 2003; devengaba un salario mensual aproximado de $2,004.00.

f. Joshua Rosario: trabajó con De Torres desde el 2 de mayo de 1993 hasta el 8 de octubre de 2003; devengaba un salario mensual aproximado de $1,804.00.

g. Maribel Torres: trabajó con De Torres desde el 19 de mayo de 1975 hasta el 19 de septiembre de 2003; devengaba un salario mensual aproximado de $1,480.00.

h. Johnny Torres Casiano: trabajó con De Torres desde el 31 de agosto de 1991 hasta el 8 de octubre de 2003; devengaba un salario mensual aproximado de $1,904.00

i. Griselle Alicea Nazario: trabajó con De Torres desde el 28 de febrero de 1991 hasta el 19 de septiembre de 2003; devengaba un salario mensual aproximado de $585.00.

j. Francisco H. Rosa: trabajó con De Torres desde el 2 de enero de 1977 hasta el 8 de octubre de 2003; devengaba un salario mensual aproximado de $3,366.48.

k. Fernando Rivera: trabajó con De Torres desde el 27 de septiembre de 1984 hasta el 8 de octubre de 2003; devengaba un salario mensual aproximado de $706.67. ”

Asimismo, se consignó entre las determinaciones formuladas por el foro de primera instancia que “la prueba demostró y el Tribunal así lo determina que don Orlando Rodríguez, gerente general de ambas empresas, hizo ofertas de trabajo a algunos de los querellantes para que continuaran trabajando en Verodam una vez cerrara De Torres”. En torno a dichas ofertas, determinó que el gerente general se reunió con el Sr. Salvador Martínez, a quien le informó sobre la creación de la nueva compañía que habría de dedicarse a lo mismo que De Torres y lo invitó a que se uniera a la nueva empresa, pero sin sueldo u otros beneficios y sin antigüedad; sus emolumentos consistirían únicamente en comisiones. Igual oferta formuló el Sr. Rodríguez al Sr. Orlando Del Valle, al momento de su despido, quien además tendría que cubrir una ruta mucho más larga, por lo que le resultaba onerosa. Lo mismo ocurrió con Joshua Rosario a quien, sin saber que De Torres cerraría operaciones, se le acercó el Sr. Orlando Rodríguez y le informó que estaría abriendo una nueva compañía y le preguntó si le interesaba formar parte de ésta, pero que para ello debía cancelar sus vacaciones, ya que el comienzo de las operaciones confligía con éstas. El 8 de octubre de 2003, el mismo día de su despido, el Sr. Orlando Rodríguez se le acercó también al Sr. Johnny Torres para preguntarle si se interesaba quedarse a trabajar en la nueva compañía, pero sin recibir salario, en calidad de contratista independiente a base de comisiones. El Sr. Torres declinó la oferta. Por último, don Orlando Rodríguez le informó al Sr. Francisco Rosa sobre la apertura de una nueva compañía y le inquirió sobre su interés de trabajar con Verodam. El Sr. Rosa le indicó que le debía hacer una oferta concreta de empleo, la que nunca se materializó.
Sobre estos ofrecimientos hechos por el Sr. Orlando Rodríguez a algunos de los apelados, el foro primario expresó que “[e]s evidente que las llamadas ofertas de empleo no fueron tales, sino más bien un intento más del patrono sucesor de obtener los servicios de los vendedores más experimentados de De Torres cual si fueran de nuevo reclutamiento, sin reconocerles antigüedad u ofrecerles salario alguno
Así pues, tras resolver que en el caso es de aplicación la doctrina de patrono sucesor, el Tribunal de Primera Instancia declaró con lugar la querella presentada en todas sus partes y ordenó a las partes querelladas a satisfacerle solidariamente las siguientes sumas por concepto de mesada adeudadas a:

“a. José A. Rodríguez Santiago, la suma de $15,967.00 más intereses legales sobre dicha suma desde el 8 de octubre de 2003 y hasta la fecha de la sentencia.

*727
b.Salvador Martínez Martínez, $25,897.00 más intereses legales sobre dicha suma desde el 8 de octubre de 2003 y hasta la fecha de la sentencia.

c. Orlando del Valle Pérez, $11,104.62, más intereses legales sobre dicha suma desde el 8 de octubre de 2003 y hasta la fecha de la sentencia.

d. Luis A Gaud vélez, $19,423.38, más intereses legales sobre dicha suma desde el 8 de octubre de 2003 y hasta la fecha de la sentencia.

e. Wilmer Lizasuain Soto, $15,261.23, más intereses legales sobre dicha suma desde el 8 de octubre de 2003 y hasta la fecha de la presente sentencia.

f. Joshua Rosario López, $7,771.08, más intereses legales sobre dicha suma desde el 8 de octubre de 2003 y hasta la fecha de la presente sentencia.

g. Maribel Torres Pérez, $14,003.08, más intereses legales sobre dicha suma desde el 19 de septiembre de 2003 y hasta la fecha de la presente sentencia.

h. Johnny Torres Casiano, $9,080.62, más intereses legales sobre dicha suma desde el 8 de octubre de 2003 y hasta la fecha de la presente sentencia.

i. Griselle Alicea Nazario, $2,295.00, más intereses legales sobre dicha suma desde el 19 de septiembre de 2003 y hasta la fecha de la presente sentencia.

j. Francisco H. Rosa, $31,075.20, más intereses legales sobre dicha suma desde el 8 de octubre de 2003 y hasta la fecha de la presente sentencia.

k. Fernando Rivera Franco, $5,218.49, más intereses legales sobre dicha suma desde el 8 de octubre de 2003 y hasta la fecha de la presente sentencia. ”

Asimismo, le impuso a las partes querelladas -De Torres y Verodam-, el pago de las costas y gastos del litigio, más la suma de $39,431.67, equivalente al 25% de la suma principal de las mesadas, por concepto de honorarios de abogado.
Inconforme, la parte querellada acudió ante este Tribunal de Apelaciones, para apelar de la resolución dictada. El 13 de octubre de 2006, un hermano panel de este tribunal revocó la sentencia del foro primario y devolvió el caso para la continuación de los procedimientos. [1] En dicha sentencia, determinó que “[p]or las circunstancias del caso se puede concluir que Verodam es patrono sucesor de la distribuidora De Torres”. No obstante, devolvió el caso al foro de instancia, por considerar que no se había hecho una evaluación para sopesar: (1) si Verodam conocía de antemano la reclamación de cada empleado contra su predecesor; (2) la relativa capacidad de De Torres y Verodam para satisfacer adecuadamente la reclamación de despido injustificado de cada empleado, de ser ésta válida, y (3) el beneficio que hayan podido o puedan derivar De Torres y Verodam respectivamente por la acción que se impugna.
Devuelto el caso al foro primario, el 25 de febrero de 2008 emitió una “Resolución Enmendada ” en la que dispuso que “[a] raíz de todas las circunstancias del caso, destiladas en las Determinaciones de Hechos, recogidas en nuestra Sentencia de 1 de junio de 2005, se activó lo dispuesto en el Art. 6 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada; 29 L.P.R.A.§. 185, por lo que corresponde el pago de la mesada a los demandantes, conforme dispuesto en dicho articulado de ley".
*728 Inconforme con lo resuelto, el 5 de marzo de 2008, Verodam presentó ante el foro apelado una “Moción Bajo Regla 43.3 Solicitando Determinaciones Adicionales de Hechos”. El 3 de abril de 2008, notificada el 8 de abril de 2008, el foro apelado emitió una Orden en la cual se declaró sin jurisdicción para atender la moción presentada.
El 17 de abril de 2008, notificada 18 de abril de 2008, este Tribunal desestimó por falta de jurisdicción un recurso presentado por Verodam, porque al momento de su presentación, el Tribunal de Primera Instancia no había emitido su dictamen en cuanto a la Moción de Determinaciones de Hechos. En dicha ocasión, este Tribunal resolvió que la resolución emitida por el foro primario había sido notificada incorrectamente por la Secretaría en el Formato “OAT-750-Notificación de Resolución y Ordenes” y que el formato a ser utilizado debió ser el “OAT-704-Notificación de Sentencia”. [2]
Insatisfecho aún, Verodam recurrió por tercera vez ante este foro y presentó una “Moción en Auxilio de Jurisdicción y Otros Extremos” en la cual solicitó, que aclaráramos cuándo comenzaba el término para que éstos pudieran acudir en apelación. A tales efectos, se emitió una orden en la cual le señalamos que hasta tanto la Secretaría del Tribunal de Primera Instancia no haga una notificación adecuada del dictamen emitido, carecemos de jurisdicción para entender en los planteamientos esbozados en el recurso.
El 17 de junio de 2008, la sentencia fue debidamente notificada por la Secretaría del Tribunal a las partes y oportunamente la parte apelante, Verodam, presentó recurso de apelación para que revisemos la sentencia del 25 de febrero de 2008, notificada 17 de junio de 2008. Los errores señalados son los siguientes:

“Primer Error

Erró el Honorable Tribunal de Primera Instancia al disponer del caso de epígrafe mediante Resolución Enmendada.

Segundo Error

Erró el Honorable Tribunal de Primera Instancia al disponer del caso de epígrafe sin establecer o indicar las determinaciones de hechos en las que basó su conclusión o determinación final; así como las demás partes de una Sentencia según lo establece la Regla 43.1 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R 43.1

Tercer Error

Erró el Honorable Tribunal de Primera Instancia al no aplicar en su análisis y conclusión la norma establecida en Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364 (2001), según le fue ordenado por el Honorable Tribunal de Apelaciones en la sentencia del 13 de octubre de 2006.

Cuarto error

Erró el Honorable Tribunal de Primera Instancia en su aplicación al caso de ' epígrafe de los criterios establecidos en el caso Bruno López v. Motorplan Inc. y otros, 134 D.P.R. 111 (1993).

Quinto Error

Erró el Honorable Tribunal de Primera Instancia al, en la “Resolución Enmendada ”, hacer referencia y basar su decisión en la sentencia que dictara dicho foro el 1 de julio de 2005 y que fue revocada por el Honorable Tribunal de Apelaciones el 13 de octubre de 2006.

*729
Sexto Error

Erró el Honorable Tribunal de Primera Instancia al no especificar en la “Resolución Enmendada ” quién de las dos partes demandadas, Juan R. De la Torres Suer., Inc o Verodam Distributors Unlimited Inc. es la obligada a satisfacer el pago, de mesada erróneamente ordenado.

Séptimo Error

Erró el Honorable Tribunal de Primera Instancia al no especificar en la “Resolución Enmendada ” cuáles serían las cuantías que alegadamente se tienen que satisfacer a los querellantes-demandantes en concepto de mesada, y al no adjudicar de manera particular e independiente de la reclamación de cada uno de los querellantes. ”

II
La Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2, dispone que "[e]n todos los pleitos, el tribunal especificará los hechos probados y separadamente consignará sus conclusiones de derecho...". Su fin primordial es poner a esta corte en condiciones de poder determinar si las conclusiones de hechos y de derecho a que llegó el tribunal sentenciador estuvieron justificadas o no. Firpo v. Pan American World Airways, 89 D.P.R. 197 (1963). Todo foro apelativo debe tener el beneficio de unas determinaciones de hechos redactados por el foro de instancia. Faltando los mismos, el foro apelativo no puede cumplir adecuadamente con su función revisora de evaluar si actuó correctamente el foro de instancia. Torres García v. Dávila Díaz y otros, 140 D.P.R. 83 (1996).

Doctrina del patrono sucesor

La doctrina del patrono sucesor se incorporó jurisprudencialmente a nuestro ordenamiento hace ya cuatro décadas, procedente del derecho común estadounidense, para atender situaciones en que una operación comercial cambia de dueño y es preciso determinar los derechos de los empleados frente al nuevo patrono. Cuando la referida doctrina aplica, se entiende que un patrono que sustituye a otro por transferencia de activos o fusión corporativa asume las obligaciones contraídas por el anterior. Piñeiro v. Int’l Air Serv. of P.R., Inc., 140 D.P.R. 343 (1996); Bruno López v. Motorplan, Inc. y otros, 134 D.P.R. 111 (1993), J.R.T. v. Asoc. C. Playa Azul I, 117 D.P.R. 20 (1986); J.R.T. v. Coop. Azucarera, 98 D.P.R. 314 (1970); J.R.T. v. Club Náutico, 97 D.P.R. 386 (1969). La adopción y el desarrollo de esta doctrina responde a “la necesidad de establecer un equilibrio entre el derecho del empresario a ‘organizar independientemente su actividad económica’ y la necesidad de reconocer ‘alguna protección a los empleados por el cambio súbito en la relación obrero-patronal’”. Rodríguez v. Urban Brands, 2006 JTS 65, res. el 11 de abril de 2006; J.R.T. v. Coop. Azucarera, supra, pág. 325 (citando de Wiley & Sons v. Livingston, 376 U.S. 543 [1964]).
El desarrollo original de la doctrina del patrono sucesor ocurrió en el Tribunal Supremo de Estados Unidos y otros foros federales en los que la misma es llamada “responsabilidad del sucesor” (successor liability). Inicialmente, la doctrina se limitaba a la puesta en vigor de convenios colectivos laborales, particularmente en cuanto a disposiciones para arbitraje. John Wiley & Sons v. Livington, supra; United Steel Workers of Amer. v. Reliance Univ. Inc., 335 F.2d. 891 (3er Cir. 1964); Wackenhut Corp. v. International U., United Plant Guard W., 332 F.2d 954 (9no Cir. 1964). De igual manera, en Puerto Rico se incorporó inicialmente la referida doctrina para resolver controversias respecto a convenios colectivos y prácticas ilícitas del trabajo. Rodríguez v. Urban Brands, supra; J.R.T. v. Asoc. C. Playa Azul I, supra; J.R.T. v. Coop. Azucarera, supra; J.R.T. v. Club Náutico, supra. Véase además: D. Fernández y C. Romany, Derecho Laboral: Casos y Materiales, Río Piedras, Ed. U.P.R., 1987, T. 2, págs. 1265-1324.
Posteriormente, los tribunales federales extendieron el alcance de la doctrina del patrono sucesor a *730 controversias por despidos discriminatorios bajo la legislación social protectora del trabajo. E.E.O.C. v. Vucitech, 842 F.2d 936 (7mo Cir. 1988); Bates v. Pacific Maritime Ass’n, 744 F.2d 703 (9no Cir. 1984); In re: Nacional Airlines, Inc., 700 F.2d 695 (11mo Cir. 1983); Equal Emp. Op. Com’n v. MacMillan Bloedel Container, 503 F.2d 1086 (6to Cir. 1974). Esta ampliación de la doctrina se justificó afirmando que la política pública contra el despido discriminatorio de trabajadores tenía una importancia similar a la política pública sobre el derecho a la negociación colectiva y la prohibición de las prácticas ilícitas del trabajo, Rodríguez v. Urban Brands, supra.
En Bruno López v. Motorplan, Inc., supra, el Tribunal Supremo resolvió que en nuestra jurisdicción la doctrina del patrono sucesor se extiende a reclamaciones por despido discriminatorio, las cuales ostentan un rango superior en nuestro ordenamiento, estando dicho discrimen prohibido tanto constitucional como estatutariamente. Así, en Piñeiro v. Int’l Air Serv. of P.R., Inc., supra, pág. 349, explicamos que “hemos ampliado la doctrina del patrono sucesor en auxilio de la responsabilidad judicial de darle vigencia en casos concretos a importantes políticas públicas en el campo laboral, conforme a nuestra realidad económica, social y cultural”, Rodríguez v. Urban Brands, supra.
A partir de la incorporación de la referida doctrina, se ha reconocido que “[l]os factores que se han considerado para responsabilizar a una entidad por las prácticas ilícitas cometidas por otra son variados”. J. R.T. v. Club Náutico, supra, pág. 400. Como mínimo, se requiere una similitud sustancial “en la operación y una continuidad en la identidad de la empresa antes y después del cambio para que se estime que el nuevo patrono deberá asumir obligaciones contraídas por el anterior”. J.R.T. v. Coop. Azucarera, supra, pág. 322. En esta última opinión citada, determinamos que la Cooperativa Azucarera Central Juncos era patrono sucesor de una compañía que había pactado un convenio colectivo con la asociación de Azucareros Profesionales, y como tal, asumió las obligaciones surgidas de dicho convenio. Al así resolver, señalamos que la concurrencia de un número suficiente de los siguientes factores resultaba determinante para atribuirle al nuevo patrono la continuidad de las obligaciones del anterior:
“(1) la existencia de una continuación sustancial de la misma actividad de negocios; (2) la utilización de la misma planta para las operaciones; (3) el empleo de la misma o sustancialmente la misma fuerza obrera; (4) la conservación del mismo personal de supervisión; (5) la utilización del mismo equipo y maquinaria y el empleo de los mismos métodos de producción; (6) la producción de los mismos productos y la prestación de los mismos servicios; (7) la retención del mismo nombre; y (8) la operación del negocio durante el período de transición. ” Id, págs. 323-325. (Citas omitidas).
Posteriormente, en Bruno López v. Motorplan, supra, pág. 122, se consideró de nuevo la jurisprudencia federal y se señaló que para determinar si existe responsabilidad de patrono sucesor es necesario sopesar varias cuestiones, entre las cuales destacan:

"(1) si el nuevo patrono conocía de antemano la reclamación del empleado contra su predecesor; (2) la relativa capacidad de cada uno de los patronos para satisfacer adecuadamente la reclamación del empleado, de ser ésta válida; y (3) el beneficio que haya podido o puedan derivar respectivamente cada uno de los patronos por la acción que se impugna. ”

Estos tres factores, al igual que los señalados en J.R.T. v. Coop. Azucarera, supra, tienen que ser ponderados al evaluar una controversia en la cual se plantea una posible responsabilidad de patrono sucesor, pero ninguno de ellos es de por sí determinante. Por ejemplo, en Piñeiro v. Int’l Air Serv. ofP.R., Inc., supra, no hubo prueba de que el patrono sucesor tuviera de antemano conocimiento de las reclamaciones de los empleados, pero aún así se le impuso responsabilidad “en un justo balance de los intereses involucrados”, considerando “la clara continuidad en la identidad entre ambas empresas, la simijlitud] en la operación del negocio, así como la política pública de proveer protección a los trabajadores en casos de despidos *731 injustificados. Sobre todo cuando en estos casos los empleados de otro modo estarían incapacitados de obtener un remedio”. Id., pág. 353. Como vemos, lo que se busca es determinar si, ante determinados hechos, concurren una cantidad suficiente de los factores señalados por la jurisprudencia como importantes para reconocer una situación de patrono sucesor, Rodríguez v. Urban Brands, supra.
Vale destacar que la doctrina del patrono sucesor se ha aplicado en casos particulares donde existe un reclamo de un empleado que está basado en un acto u obligación originalmente imputable al patrono predecesor. Es decir, sólo se ha utilizado dicha doctrina para imponerle responsabilidad a un nuevo patrono que ha mantenido la continuidad del negocio adquirido, pero en ocasiones en que se le reclama a ese nuevo patrono por un acto u obligación del que debió responder el patrono anterior. De ahí la necesidad misma de recurrir a dicha doctrina, Adventist Health v. Mercado, 2007 JTS 106, res. el 30 de mayo de 2007.

Ley sobre Despido Injustificado

El Art. 1 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como Ley de Indemnización por Despido Injustificado, 29 L.P.R.A. sec. 185a et al, (Ley 80) dispone que “[tjodo empleado de comercio, industria o cualquier otro negocio o sitio de empleo,[...] donde trabaja mediante remuneración de alguna clase contratado sin tiempo determinado, que fuere despedido de su cargo sin que haya mediado justa causa, tendrá derecho a recibir de su patrono, en adición al sueldo que hubiere devengado... ” una indemnización comúnmente llamada la mesada, que se computa a base de la cantidad de años de servicio rendidos para el patrono. 29 L.P.R.A. Sec. 185a.
Por su parte, el Art. 6 del referido estatuto dispone -en lo pertinente- que “[e]n el caso del traspaso de un negocio en marcha, si el nuevo adquirente continúa utilizando los servicios de los empleados que estaban trabajando con el anterior dueño, se les acreditará a éstos el tiempo que lleven trabajando en el negocio bajo anteriores dueños”. 29 L.P.R.A. Sec. 185f.
La Ley 80 tiene un valioso propósito social y coercitivo, a saber, sancionar que un patrono despida a su empleado u empleada, salvo que demuestre una causa justificada para ello. En otras palabras, tiene el propósito de brindarles mayor protección a los trabajadores de Puerto Rico. Igualmente, tiene un fin reparador, pues provee remedios justicieros y consubstanciales con los daños que puede haberle causado a un cesanteado un despido injustificado. Beauchamp v. Holsum Bakers of P.R., 116 D.P.R. 522, 526 (1985).
En vista de su propósito reparador, la Ley 80 debe siempre interpretarse de manera liberal y favorable al empleado. Belk v. Martínez, 146 D.P.R. 215 (1998); Martínez Reyes v. Tribunal Superior, 104 D.P.R. 407 (1975).
El legislador incorporó el estándar de “justa causa” como limitación a toda acción de despido de parte del patrono. Así pues, la justificación de un despido se evalúa a la luz de las disposiciones de la Ley Núm. 80, supra. Específicamente, el Artículo 2 de dicha Ley, 29 L.P.R.A. § 185b, dispone que se entenderá como “justa causa” para el despido de un empleado lo siguiente:

“(a) que el obrero siga un patrón de conducta impropia;

(b) la actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo de forma tardía y negligentemente o en violación de la normas de calidad del producto que se produce o maneja por el establecimiento;

(c) violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado 
*732
oportunamente al empleado;

(d) cierre total, temporero o parcial de las operaciones del establecimiento;

(e) los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público; reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido. ”

La Ley 80 le reconoce a un patrono el derecho a despedir a sus empleados si la razón no es arbitraria; ello, “se reconoce como una facultad o derecho que ostenta todo patrono en una sociedad moderna que se desarrolla y desenvuelve alrededor y a base de las fuerzas del libre mercado y del derecho de propiedad o de dirección empresarial. ” Díaz Fontánez v. Wyndham Hotel Corp., supra. Ahora bien, el Artículo 8 de la Ley Núm. 80, 29 L.P.R.A. § 185k, crea una presunción de que el despido del empleado fue injustificado; o sea, en una acción por despido injustificado, el patrono tiene el peso de la prueba para establecer que el despido estuvo justificado. Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364 (2001); Belk Arce v. Martínez, supra; Secretario del Trabajo v. I.T.T., 108 D.P.R. 536 (1979).
III
Antes de comenzar el análisis de los errores señalados por la parte apelante, es preciso aclarar el ámbito de la controversia ante nos.
Se trata ésta de una acción por despido injustificado, en la que se alega que Verodam es responsable del pago de la mesada en virtud de la figura del patrono sucesor. Es decir, se le reclama a Verodam por el pago de la mesada, aduciendo que De Torres los despidió injustificadamente y que Verodam, como patrono sucesor, debe responderles. Por tanto, no es de aplicación lo dispuesto en el Art. 6 de la Ley 80, ya que los empleados apelados nunca trabajaron para Verodam; tampoco reclaman que se les reconozcan derechos que hubiesen adquirido como empleados de De Torres.
Aclarado lo anterior, la controversia se reduce a determinar si el foro primario erró al hacer una determinación sobre la existencia de justa causa, a tenor de la Ley 80, para despedir a los empleados apelados o si, por el contrario, el despido fue injustificado. Dicho análisis requiere que consideremos los criterios analizados en el caso Bruno López v. Motorplan, supra.
En su primer y segundo señalamiento de error, la parte apelante alega que el Tribunal erró al disponer del caso mediante resolución, y al no consignar las determinaciones de hechos en la cuales fundamentó su decisión.
Reiteradamente se ha resuelto que cuando un tribunal dicta una resolución, pero ésta verdaderamente pone fin a todas las controversias entre las partes, ello constituye una sentencia final de la cual puede recurrirse en apelación. De Jesús v. Corp Azucarera de PR, 145 D.P.R. 899 (1998). En el caso ante nos, ya este Tribunal había reconocido que la Resolución Enmendada aquí apelada es una sentencia. Fue precisamente en virtud de ello que este Tribunal ordenó su correcta notificación. Así pues, concluimos que no se cometió el primer error.
En el segundo y quinto error, se alega que el Tribunal erró al incorporar las determinaciones de hechos de la sentencia revocada por este Tribunal y no consignar en la “Resolución Enmendada” las determinaciones de hechos en las cuales fundamentó su decisión.
En la sentencia de 13 de octubre de 2006 dictada por este Tribunal al revisar la resolución original del 1ro. de junio de 2005, este foro “asumió la corrección” de las determinaciones de hechos del foro primario, al reconocerle que se encuentra en mejor posición para apreciar y evaluar la prueba. Al devolver el caso al tribunal *733 primario, este Tribunal avaló la determinación hecha en la resolución original, en el sentido de que Verodam es patrono sucesor de De Torres. No obstante, encontró necesario no sólo que se hicieran nuevas conclusiones de derecho, sino también que se evaluara la totalidad de la prueba, para poder realizar determinaciones de hechos adicionales como lo es la capacidad de económica de De Torres y de Verodam para mantener como empleados a los apelados. Asimismo, expresó este Tribunal que ese criterio es necesario, entre otras cosas, para evaluar la razonabilidad de las ofertas hechas a algunos de los apelados, por Verodam. En otras palabras, el mandato de este Tribunal no requería que se descartaran las determinaciones previamente hechas por el foro primario, sino que se ampliaran sus determinaciones de hechos y conclusiones de hechos para así concluir la responsabilidad de De Torres y Verodam. Partiendo de ello, no encontramos error en que el foro primario hubiese mantenido inalteradas sus determinaciones de hechos que surgen de la sentencia de 1ro. de junio de 2005. Por tanto, no se cometieron los errores 2 ni 5 señalados por el apelante.
Ahora bien, como antes expresamos, el mandato del Tribunal de Apelaciones le exigía que consignara nuevas determinaciones de hechos y conclusiones de derecho, partiendo de la prueba desfilada. Veamos.
El foro apelado añadió en su “Resolución enmendada” que “fijas conversaciones y gestiones del Presidente de Verodam, para ayudar a su yerno como Presidente de De Torres, comenzaron mucho antes de que efectivamente se llevara a cabo el traspaso del negocio, por lo que Verodam conocía de las consecuencias previsibles del mismo incluyendo reclamaciones laborales. Por eso, antes del “cierre parcial" o “total" precisamente hizo ofertas a ciertos empleados, que resultaron irrazonables en consideración al tiempo que los mismos habían trabajado en De TorresAsí pues, en su sentencia quedó consignado que Verodam tenía pleno conocimiento de que los apelados habían sido despedidos sin justa causa. Determinó también dicho foro, que las ofertas de empleo de Verodam a los apelados fue irrazonable, a la luz de lo que habían sido sus condiciones de trabajo con De Torres. Así pues, el foro sentenciador incluyó nuevas determinaciones mixtas de hecho y de derecho, a base de la prueba desfilada, relativas a la irrazonabilidad de las ofertas de empleo hechas por Verodam a los empleados apelados y su conocimiento sobre las reclamaciones laborales de los apelados.
En relación al tercer error, al evaluar el caso conforme a lo resuelto en Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364 (2001), se requería determinar si el hecho de que De Torres hubiese perdido la mayor parte de sus líneas de productos, constituye justa causa para el despido de los empleados apelados. Dispuso el foro primario en su sentencia que “[cjonforme la prueba desfilada y creída, De Torres antes, al momento y después del traspaso del negocio a Verodam tenía capacidad para retener a los 11 empleados demandantes, ya que contaba con la distribución de las cuatro líneas de productos que traspasó a Verodam. De igual manera, De Torres tenía la capacidad para satisfacer la mesada de los empleados cesanteados, con el dinero que le fue pagado por Verodam como resultado del traspaso del negocio. (Véase Determinaciones de Hechos #9). Aún así, De Torres prefirió desentenderse de satisfacer dichas mesadas bajo la alegada justificación inexistente de cierre total o parcial de operaciones. ”
De lo anterior se desprende que el tribunal sentenciador concluyó que Verodam tenía la capacidad para retener a los empleados cesanteados y que, conociendo de su obligación y teniendo capacidad para ello, tampoco cumplió con su obligación de pagar la mesada. Más aún, se desprende de dichas determinaciones que el Tribunal de Primera Instancia sostuvo que, en efecto, no hubo un cierre total ni parcial de las operaciones. Expresó además el tribunal que el hecho de que De Torres había perdido la mayor parte de sus líneas de productos no constituye justa causa para haber cesanteado al resto de los empleados, cuando aún operaba y trabajaba cuatro líneas de productos al momento del “cierre parcial” o “total”. Concluyó entonces, que el despido de los apelados fue uno injustificado. Al así hacerlo, cumplió con lo ordenado por el Tribunal de Apelaciones y con la evaluación de los criterios establecidos en los casos Díaz v. Wyndham Hotel Corp, supra, y Bruno López v. Motorplan, Inc. y otros, supra. No se cometieron los errores 3 y 4.
La Ley 80 tiene como propósito garantizar que los empleados despedidos sin justa causa tengan derecho a *734 recibir de su patrono una compensación correspondiente a un mes de sueldo más una compensación adicional progresiva tomando en consideración los años de servicio y su salario. A base de la determinación de hecho número 13 de la resolución de 1ro. de junio de 2005, adoptada por referencia en la resolución enmendada, se establece el período de tiempo trabajado por cada apelado. También surge el cálculo de la mesada, a base de los hechos admitidos y creídos por el foro primario.
Aun cuando nos parece que la forma en que el foro primario consignó los hechos probados en su sentencia no es la más apropiada, ciertamente surgen de ésta las bases para la decisión tomada y sus conclusiones de derecho.
En ausencia de error manifiesto, pasión, prejuicio o parcialidad, un tribunal apelativo no debe intervenir con las determinaciones de hechos y adjudicación de credibilidad hecha por el juzgador de hechos en el Tribunal de Primera Instancia, que es quien tuvo la oportunidad de escuchar las declaraciones de los testigos, pudo apreciar su “demeanor ” y está en mejor posición para aquilatar la prueba. Las determinaciones de hechos del Tribunal de Primera Instancia merecen gran deferencia y no deben ser descartadas arbitrariamente, ni sustituidas por el criterio de un tribunal apelativo.” Colón Muñoz v. Lotería de Puerto Rico, res. el 20 de abril de 2006, 2006 JTS 74.
La pretensión de Verodam de que nuevamente devolvamos el caso para que el Tribunal de Primera Instancia consigne de manera separada sus determinaciones de hechos, milita en contra de la justicia y del derecho de los apelantes a un remedio concedido por legislación especial para atender la situación que provoca el despido injustificado. Por entender que la sentencia cumple con el fin de notificarle a las partes las bases para la decisión y los hechos probados, concluimos que no se cometió el error número 6.
Por último, las conclusiones de derecho del foro primario claramente revelan que éste entendió que Verodam tenía una relación estrecha con De Torres. Concluyó que Verodam vino al rescate de De Torres y para beneficiarle traspasó los activos de la distribuidora De Torres a la distribuidora Verodam, prácticamente de un día para otro, sin retener a los empleados que hasta ese momento continuaban desempeñando sus funciones. El Tribunal reconoció que las obligaciones que se atribuyan al patrono sucesor se determinan caso a caso, con arreglo a las circunstancias particulares de cada cual y determinó que conforme a las circunstancias presentes en éste, se había activado lo dispuesto en el Art. 6 de la Ley 80.
Aunque, como antes expresamos, el Artículo 6 de la Ley no es de aplicación a los hechos de este caso, por no tratarse aquí de un negocio en marcha, la conclusión del foro primario es correcta, al imponerle responsabilidad a Verodam por el pago de la mesada de los apelados. Utilizando los criterios aplicados por el Alto Foro en el caso de Piñeiro v. Int’l. Air Serv. of P.R., Inc., 140 D.P.R. 343 (1996), nos encontramos con un patrono predecesor que no es capaz de proveer un remedio a los empleados, así como que hay una continuidad sustancial de las operaciones del negocio. A pesar de que el tribunal de instancia erró al determinar que aplica el Art. 6 de la Ley 80, por lo que le fijó responsabilidad a Verodam, la sentencia es correcta, ya que a igual conclusión llegamos al aplicar la doctrina del patrono sucesor. Resolvemos, por tanto, que Verodam responde por el pago de la mesada. En conclusión, resolvemos que no se cometieron los errores señalados por el apelante.
Por los fundamentos discutidos, se confirma la sentencia apelada en todas sus partes.
Lo acordó el Tribunal y lo certifica la Secretaria.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
*735 ESCOLIOS 2009 DTA 16

1. KLAN-2005-00921, KLAN-2005-00924.

2. KLCE-2008-00432.